James J. LEWANDOWSKI and Susan Lewandowski, Appellants (Plaintiffs Below),

v.

Joseph L. BEVERLY and Lester G. Healy d/b/a Country Aire Estates, Appellees (Defendants Below).

No. 3–180A11.

Court of Appeals of Indiana, Third District.

May 21, 1981.
Rehearing Denied July 2, 1981.

John Hovanec, Gary, for appellants.

William S. Suarez, Suarez & Harper, Portage, for appellees.

HOFFMAN, Presiding Judge.

The plaintiffs in this action contracted with the defendants-sellers for the purchase of a portion of real estate located in Porter County, Indiana. The plaintiffs were inexperienced buyers and sought to purchase this property to construct a home thereon. On September 20, 1976 the parties entered into a written offer to purchase real estate which described a one-acre parcel of land measuring 180 feet by 240 feet and was located at the southeast corner of a 22-acre parcel owned by the defendants. The written offer was a form contract filled in by the defendant, Joseph Beverly, and required, among other provisions, that the sellers furnish a stake survey and title evidence, at least five days prior to the closing date. The title evidence was to be "in the form of a preliminary title report for an owner's title guarantee policy in the amount of the purchase price, current to a date after the date of acceptance of this offer, evidencing good merchantable title to the real estate, free and clear of all liens, rights to liens and encumbrances, except as stated otherwise in this offer, subject only to current property taxes and such easements and restrictions of record as do not prevent buyers from utilizing the property for the primary use for which they purchased the same." The total purchase price was $7,900 and the buyers paid $500 of that amount as earnest money.

Closing was scheduled by the sellers for November 1, 1976. The buyers went to the defendant's home on that date for purposes of closing the transaction and took with them a cashier's check for $7,400 to pay the balance of the purchase price. At that point, the problems began. Mr. Beverly had failed to obtain the proper evidence of good title under the mistaken belief that he had stricken this requirement from the contract. The stake survey revealed a second problem in the form of a four-foot encroachment on the subject property by a neighbor's fence. Mr. Beverly attempted to

resolve this encroachment problem at that time but was unable to contact the adjoining landowner. Eventually (in late December) a solution was reached by simply moving the subject parcel over four feet and resurveying the land. Due to these problems, the parties were unable to close the transaction on November 1, 1976.

The undisputed evidence regarding the title also shows that the sellers had a $66,-000 mortgage on the entire 22-acre parcel of land and a delinquent personal property tax lien had been placed against the property. The evidence further shows that the sellers' contended a release of the mortgage would be obtained and presented to the buyers at closing. The buyers asked for the release to be obtained before a closing date was set, since the contract stipulated that title evidence would be furnished five days prior to closing. No release was ever obtained. Insofar as the unpaid taxes were concerned, the sellers agreed to "take care of it at closing."

Subsequent negotiations between the parties and their attorneys are unclear. Both parties argue that they wanted to close on the transaction but the other party failed to cooperate. Nevertheless, the buyers' earnest money was returned on February 20, 1977 and this action was commenced by the buyers on March 8, 1977 requesting specific performance and damages. The trial court found for the sellers and the buyers now appeal.

The buyers initially argue that the trial court abused its discretion in denying specific performance. It is axiomatic that this Court will not weigh the evidence but only consider the evidence most favorable to the appellee and all favorable inferences to be drawn therefrom, and will reverse the trial court only if there is no substantial evidence of probative value to support the trial court's finding. *McMahan Constr. Co. v. Wegehoft Bros.* (1976), 170 Ind.App. 558, 354 N.E.2d 278.

■ This analysis must begin with a discussion of the contract itself. The document was a form contract furnished and completed by the sellers. As such, it must be strictly construed against the sellers. *Western & Southern Life Ins. Co. v. Vale* (1938), 213 Ind. 601, 12 N.E.2d 350. The document contained all the necessary elements for the creation of a contract and was valid and enforceable when written. A closing date was set for November 1, 1976 and, at that time, the sellers technically defaulted on the contract while the buyers were ready, willing and able to perform. The sellers were required to furnish evidence of good title and failed to do so. According to the record of this case, the sellers have never provided evidence to the buyers that the tax lien has been removed or that the mortgage has been released. Thus, the sellers have been in continuous default since November 1, 1976.

■ Specific performance is not available as a matter of right but rests in the sound discretion of the trial court. *Gyr et al. v. Hagemann et al.* (1960), 130 Ind.App. 212, 163 N.E.2d 620. Such judicial discretion is not an arbitrary one but is governed by and must conform to the well-settled rules of equity. *Guraly v. Tenta et al.* (1956), 126 Ind.App. 527, 132 N.E.2d 725.

> "Judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done. An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. The exercise of a lower court's discretion is not reviewable; it is only the alleged abuse of that power which is reviewable on appeal. Bowers' Judicial Discretion of Trial Courts, 1931, §§ 10 to 12."

> *McFarlan v. Fowler Bank City Trust Co.* (1938), 214 Ind. 10, at 14, 13 N.E.2d 752, at 754.

Thus, a reversal in the present case must rest on a showing that the trial court's refusal to grant specific performance was against the logic and effect of the facts and circumstances before the court.

■ The facts reveal that the sellers have been in continuous default of the terms of the contract since November 1, 1976. Although the buyers have repeatedly requested the title evidence necessary to cure the default, the sellers, to date, have failed to provide the same. At the same time, the buyers have remained ready, willing and able to perform all of their obligations under the contract. These facts do not support the decision of the trial court and, indeed, the court's refusal to grant specific performance is against the logic and effect of the facts. Therefore, a reversal is required. To do less would deny the appellants the equities exercisable by the court and their contract rights would be "brushed aside and left to perish. . . ." *Gyr v. Hagemann, supra.*

■ In support of the trial court's decision, the defendants offer various theories. First, they contend that the value of the subject real estate has doubled since this contract was originally signed and that this change of circumstances justifies the denial of specific performance. The present value of the property is $15,500 to $16,000 while the purchase price under the disputed contract is $7,900. The defendants cite the case of *Boldt v. Early* (1904), 33 Ind.App. 434, 70 N.E. 271, as authority for their position.

> "If, *succeeding the fault of the vendee* by the failure to pay an installment of the purchase money at the time stipulated in the contract, there has been a considerable increase in the value of the property, this may be sufficient reason for denying him specific relief; for the contract would thereby become an unequal one, and its specific enforcement would encourage delays by enabling the vendee to take advantage of changes in his favor, though he might have delayed intentionally, having purchased for speculation, and not meaning to perform unless favorable changes occur." (Citations omitted and emphasis added.)
>
> 70 N.E. at 274.

This rule of law does not apply in the present case since it rests on the fault of the vendee. If the buyer has failed to properly perform, he may not request specific enforcement of a contract which would be unfair and place a hardship on the seller. *Boldt* is readily distinguishable from the present case since the seller and not the buyer is in default here.

The sellers also rely on *Commonwealth v. Pendleton* (1978) 480 Pa. 107, 389 A.2d 532, in which specific performance of a contract to sell real estate was denied. In that case, the buyers caused a delay of nearly eight months, during which time the real estate doubled in value. The court there held, "the change [increase in value] and the delay *together* will constitute a sufficient ground for denying a specific performance when sought by the one who was thus in default." The sellers in the present case fail to realize that they are the ones in default, not the buyers. The delay here is not chargeable to the buyers and, thus, the above case is not controlling. Therefore, the increase in the value of the property will not preclude the granting of specific performance.

The sellers also appear to argue that material alterations were made in the contract which subsequently rendered it unenforceable. The only alteration which can be discerned from the record is a mutual agreement to move the parcel of land over four feet to avoid the encroachment problem. This alteration was proposed by the sellers as a convenience to both parties in avoiding litigation with the adjoining landowner. In *Foltz v. Evans* (1943), 113 Ind.App. 596, 49 N.E.2d 358, the following comments were made concerning alterations to a contract:

> "The evidence shows that frequent negotiations were had between the Appellee and Foltz at and after the time of the exchange of papers and check whereby slight changes were made in the plans and specifications, thus introducing, according to the Appellant, new terms not covered by the memorandum and the Appellant contends that the contract is thereby rendered unenforceable. . . . We do not agree that the contract was thus rendered unenforcible [sic], nor do we

feel that the various agreements concerning extras does [sic] violence to the provision of the original offer that 'It is expressly agreed that all terms and conditions are included herein and no verbal agreements of any kind shall be binding or recognized.' It is well settled that a contract stipulating that any modification must be in writing may nevertheless be modified verbally, 17 C.J.S., Contracts, p. 867, § 377 c, and it has been held in this state that when such additions or alterations are made, the original contract, unless it be so entirely abandoned that it is impossible to trace it and say to what part of the work it shall be applied, still exists, and binds the parties as far as it can be followed. The additions or alterations, if the expense of the work is thereby increased, may be the subjects of a new contract, either express or implied, but they do not affect the original contract, which still remains in force."

49 N.E.2d at 365.

Accordingly, the original contract in this case remained in force even though a mutually accepted alteration in the description of the land had been substituted. This change is not sufficient to conclude that the entire contract had been abandoned and thereby rendered unenforceable. The contract, as altered, is valid and binding on both parties.

■■■ For purposes of remand, it is also necessary to discuss the propriety of the court's action in first granting the appellants' motion for a jury trial and then dismissing the jury at the close of the plaintiffs-appellants' evidence. Pursuant to Ind. Rules of Procedure, Trial Rule 38(A), claims of an equitable nature shall be tried to the court while legal claims shall be heard by a jury. As was long ago explained in the case of *Carmichael v. Adams et al.* (1883), 91 Ind. 526, at 526–527,

" 'Where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law.' 1 Pom. Eq., section 231. Wherever equity jurisdiction is developed, it continues through the entire controversy, and ends only with a complete adjustment of the rights of the parties and the award of full relief. [Citations omitted.]

"The court, having acquired jurisdiction of the present case as a suit in equity to foreclose a mortgage, was not bound to dissect the suit into separate members, and try each separately, one member as a matter of law, and the other as a matter of equity, but had a right to treat the case as a unity, and as one of exclusive equitable jurisdiction.

"Where questions are so closely blended and so firmly interlaced as in a suit upon a note and mortgage, there can be no severance and no separate trials. One trial, or, to speak more accurately, one hearing, ends the whole controversy."

For further discussion, *see Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834. Specific performance is a matter of equity. *Hill v. Jessup* (1966), 139 Ind.App. 467, 220 N.E.2d 662.

In the instant case, the court properly determined, after hearing the plaintiffs' case, that the legal and equitable issues were "so closely blended and so firmly interlaced" that there could be no severance. Thus, the entire case was drawn into the court's equitable jurisdiction. On remand, the trial court may properly decide the issues without a jury.

For the foregoing reasons, this case is remanded to the trial court for proceedings not inconsistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.