James J. BOHLIN and Jane A. Richardson, Appellants–Defendants Below,

v.

Steven JUNGBAUER and Erin B. Jungbauer, Appellees–Plaintiffs Below.

No. 43A03–9210–CV–339.

Court of Appeals of Indiana, Third District.

May 27, 1993.

John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellants-defendants.

Stephen R. Snyder, Donald K. Broad, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for appellees-plaintiffs.

STATON, Judge.

The trial court granted Steven and Erin Jungbauers' (the "Jungbauers") motion for summary judgment and ordered specific performance of a purchase agreement between the Jungbauers and James Bohlin and Jane Richardson (the "Bohlins"). The order also required the Bohlins to pay $20,945.18 in damages. The Bohlins appeal $18,578.68 of the damages. The Bohlins raise two issues for our review which we consolidate and restate as whether the trial court erred in awarding "damages" to the Jungbauers following the decree for specific performance.

We reverse and remand.

On March 23, 1991, the Bohlins accepted the Jungbauers' offer to purchase the Bohlins' residence. Closing was to occur by May 31, 1991. The purchase agreement (the "Agreement") required the Bohlins to correct defects in the title of the property within a reasonable time. In late May, a defect in the title appeared, and the closing did not occur. The quiet title action began in August and concluded in December.

In February of 1992, the Jungbauers filed this action for specific performance of the Agreement and expenses incurred because the closing did not occur as agreed. The trial court ordered specific performance and awarded $20,945.18 in damages. The Bohlins' dispute the following damages:

| Item | Cost |
|---|---|
| Apartment rental | $5,247.00 |
| Cost of commuting | $2,288.00 |
| Costs of second moving & storage of property | $1,240.00 |
| Difference between lake front and non-lake front rental | $3,045.00 |
| Fees to first attorney, Refior [1] | $1,158.74 |
| Husband's loss of summer income | $2,000.00 |
| Increased lumber prices | $1,500.00 |
| Long distance telephone calls | $ 70.80 |
| Restocking fees for construction materials | $2,029.14 |
| Total Amount | $18,578.68 |

Record, p. 23.

### Discussion

■ The Bohlins' contend the Jungbauers cannot recover these damages because they sought and received specific performance. We agree specific performance erases the breach and precludes damages at law. However, as part of a specific performance decree, the trial court may award equitable compensation to adjust the equities of the parties. *North v. Newlin* (1982), Ind.App., 435 N.E.2d 314, 319–20, n. 2, *trans. denied.*

■ Specific performance enforces the contract, and the order must, as nearly as possible, cause the contract to be performed in accordance with its terms. "[O]ne of those terms is the date fixed ... for its completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned by the delay by offsetting them with money payments." *Bissonnette v. Hanton City Realty Corp.* (1987), R.I., 529 A.2d 139, 143 (quoting from 7 A.L.R.2d 1204, 1206 (1949)). This equitable compensation is considered an accounting between the parties, rather than an assessment of damages. *Bissonnette, supra;* 71 Am. Jur.2d Specific Performance § 216 (1973). *North, supra,* at 319–20, recognized the equitable setoff of rental value of the land and of the interest on the purchase price.

---

**1.** The fees of the second attorney, Snyder, are not disputed by the Bohlins.

*Hollars v. Randall* (1990), Ind.App., 554 N.E.2d 1177, 1178–79, recognized an equitable accounting following the grant of specific performance, if requested. The trial court failed to conduct an accounting, and we reverse and remand for an accounting.

■ In making the accounting, the trial court should have treated the Jungbauers as if they had owned the residence from the closing date, and allowed them to receive the reasonable rental value of the residence.[2] The Jungbauers will be required to pay interest on the purchase price from the date of closing. *See North, supra.* To prevent unjust enrichment, the trial court should also credit the party who has paid for the permanent improvements, maintenance, insurance premiums, property taxes, assessments, repairs, and the like on the property for such expenditures.[3] *Basiliere v. Arruda* (1992), R.I. 604 A.2d 343, 344; *4200 Ave. K Realty v. 4200 Realty Co.* (1986), 123 A.D.2d 419, 506 N.Y.S.2d 723, 725, A.D. 2 Dept.

The Jungbauers cite no specific authority which provides the remaining expenses they seek. They generally rely on *Lewandowski v. Beverly* (1981), Ind.App., 420 N.E.2d 1278, 1282, *trans. denied.* However, *Lewandowski, supra,* dealt with the development and end of equity jurisdiction when the legal and equitable questions were "so closely blended and so firmly interlaced that there could be no severance" of the questions. The equity jurisdiction ended "only with a complete adjustment of the rights of the parties and the award of full relief." *Id.* The "full relief" in *Lewandowski* addresses the resolution of all legal and equitable issues presented to the court. It does not require a court in equity to grant a party payment for all expenses submitted to the court. *Id.*

■ Indiana law provides no guidance on the expenses sought by the Jungbauers. Initially, in examining the expenses sought, we conclude the commuting expenses and

the phone calls are too speculative to be included in the accounting. Additionally, attorney's fees were provided for in the Agreement and will be discussed, *infra.* We look to other jurisdictions for guidance on the remaining expenses. Some jurisdictions do not permit the recovery of any expense other than those addressed above in a specific performance action. *See, Basiliere, supra,* (increased interest is not recoverable); *4200 Ave. K Realty, supra; Arnold v. Leahy Home Building Co. Inc.* (1981), 95 Ill.App.3d 501, 420 N.E.2d 699, 705 (no authority for awarding damages for storage, extra housing or commuting expenses).

Alternatively, other jurisdictions allow recovery of other damages. However, these jurisdictions require time to be of the essence and the expenses to be fairly and reasonably considered as naturally arising from a breach of contract, according to the usual course of things. *Bush v. Cathey* (1979), Tenn.App., 598 S.W.2d 777, 783, *cert. denied* Tenn.S.Ct. (1980) (purchase agreement set an expressed date the purchasers were to take possession and the purchasers were permitted to recover cost of moving a second time) Additionally, expenses which arise from special circumstances are not recoverable unless the special circumstances are known or have been communicated to the person who breaches the contract. *Young v. Raupp* (1957), Mo. App., 305 S.W.2d 731 (seller informed when sales contract was entered time was of the essence for the transplanting of the shrubs; seller failed to deliver land; shrubs died; and purchaser recovered cost of shrubs). *See also, Hadley v. Baxendale* (1854), 9 Exch. 341, 5 E.R.C. 502; 11 A.L.R.4th 893 (1982).

■ We conclude the second approach provides a more equitable solution in this type of case. A court "asked to give equitable relief generally do[es] not consider time to be of the essence unless the terms of the agreement or the conduct of the

---

**2.** The reasonable rental value of the residence eliminates the need to look at the rent paid and the differential value asserted by the Jungbauers.

**3.** However, the defaulting party may not profit from his own wrong.

parties indicate[s]" that intent at the formation of the agreement. *Hollars*, 554 N.E.2d at 1179. The Agreement herein does not expressly make time of the essence. The specification of a date certain for closing does not make time of the essence. *Id.* Additionally, the only facts before the Agreement was entered is the following chronology of events provided by the Jungbauers:

> March 18 Met with Eric Smith at Indiana Lawrence Bank, North Manchester, financing for $160,000 plus $20,000 for construction. [Indiana Lawrence Bank] would lend [the Jungbauers] the money pending a favorable appraisal.
>
> March 20 Met with Mick Welborne at the Bohlins' [residence] to inspect the house and make sure we could do[ ] the type of remodeling we had in mind.
>
> \* \* \* \* \* \*
>
> March 23 [The Bohlins] accepted our offer and signed the purchase agreement.

Record, p. 113. While the Jungbauers represented to the trial court the $20,000 was for construction, the bank which was ultimately to finance the transaction believed "[t]he $20,000, of course, will be used to pay off your existing loans on your automobiles." Record, p. 112. We do not conclude the inspection of the house by Mick Welborne to "make sure we could do[ ] the type of remodeling we had in mind" made time of the essence or gave the Bohlins knowledge time was of the essence. Because time was not of the essence, the Jungbauers cannot recover the other expenses they sought.

On the issue of attorney's fees, Attorney Refior acted to bring about the closing and to settle the Jungbauers' claim for breach of the Agreement. No statute provides such fees are recoverable. The Agreement provides for reasonable attorney's fees "in connection with any litigation arising out of this agreement ...". Record, p. 34. The litigation was for specific performance and was not connected to the closing or the settlement. We are bound by the plain words of the Agreement and fees for these services were not provided for in the Agreement of the parties.

### Appellate Attorney's Fees

The Jungbauers have moved for appellate attorney's fees. The Agreement provides "in connection with any litigation arising out of this agreement, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees." Record, p. 34. *Radio Distributing v. National Bank and Trust* (1986), Ind.App., 489 N.E.2d 642, 649, excepted appellate attorney's fees from the general rule of merger on equitable principles. We remand the issue of appellate attorney's fees to the trial court for a hearing on the matter. *Id.*

We reverse and remand this cause to the trial court for an accounting in accordance with this opinion. Additionally, the trial court must hold a hearing to determine what are appropriate appellate attorney's fees.

GARRARD and NAJAM, JJ., concur.