**UFG, LLC, David Henigan, Lavern C. Schramer, Jr., and Carol Schramer, Appellants–Plaintiffs,**

v.

**SOUTHWEST CORPORATION, Appellee–Defendant.**

No. 71A03–0511–CV–568.

Court of Appeals of Indiana.

June 2, 2006.

Transfer Denied Sept. 26, 2006.

Timothy W. Woods, Colin J. Reilly, Jones Obenchain, LLP, South Bend, for Appellants UFG, LLC and David Henigan.

David B. Weisman, Weisman Associates, P.C., Mishawaka, IN, Michael T. Franz, Pro Hac Vice, Freeborn & Peters LLP, Chicago, IL, for Appellants Carol A. Schramer and Lavern C. Shramer, Jr.

Timothy J. Maher, D. Michael Anderson, Michael J. Hays, Barnes & Thornburg, LLP, South Bend, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

UFG, LLC ("UFG"), David Henigan ("Henigan"), LaVern Schramer, Jr., and Carol Schramer (collectively, "Buyers") appeal the trial court's judgment in favor of Southwest Corporation ("Seller") in Buyers' action for specific performance and legal damages. Specifically, Buyers argue that the trial court erred in finding that specific performance is no longer an available remedy and that Buyers abandoned any claim for legal damages by electing specific performance as their remedy. We affirm the trial court's ruling

that specific performance is not an available remedy, but because Buyers never "elected" specific performance as their remedy, we reverse and remand with instructions for the trial court to hold a hearing on Buyers' alternate remedy of legal damages.

### Facts and Procedural History

On April 14, 2000, Buyers [1] filed a Complaint for Specific Performance and for Damages ("Complaint") against Seller and its president, Donald B. Fisher, and a notice of lis pendens,[2] relating to the sale of the College Park Horizontal Regime located in St. Joseph County, Indiana ("Property"). Count I of the Complaint, labeled "Specific Performance," alleged that Seller had wrongfully refused to follow through on its promise to sell the Property to Buyers, that Buyers still desired to purchase the Property, and that Buyers "believe[d] money damages to be an inadequate remedy." Appellants' App. p. 23. Buyers asked the trial court to order Seller "to convey the [P]roperty in accordance with the terms and conditions of the contract of sale, for costs, and all other appropriate relief." *Id.*

Count II, labeled "Damages," incorporated the allegations in Count I and also provided:

14. As a result of [Seller's] breach of contract and refusal to sell the [Property] to [Buyers], [Buyers] have sustained economic and monetary loss in the amount of approximately $82,818.00, and other damages, including but not limited to the value of lost revenue from the property and the appreciation of the [P]roperty, which are of a continuing nature and subject to change. The lost net revenue from the [P]roperty is estimated to exceed $55,000.00 per year, and the estimated appreciation of the [P]roperty over the next fifteen years is estimated to be approximately $382,500.00.

15. [Seller] knew, or in the exercise of reasonable diligence could have foreseen, that [Buyers] would sustain economic and monetary loss, and other damages, as a result of [Seller's] breach of contract to sell the [Property].

*Id.* at 23. Buyers requested "judgment against [Seller] in the sum of $1,290,318.00 or otherwise as shown by the evidence, for costs, and all other appropriate relief." *Id.* at 24. In its answer, Seller contended that there was never an enforceable contract between the parties and that Buyers were not entitled to specific performance or any money damages.

On November 30, 2001, the parties filed a Stipulated Motion to Bifurcate Trial, which provided, in pertinent part:

Pursuant to Trial Rule 42(B), the parties jointly move to bifurcate for purposes of trial the issues of damages, attorney's fees, and other non-declaratory relief prayed for in the event that the contract issues are decided against the defendant.

In support of their motion, the parties state:

---

1. Carol Schramer, whom we list as one of the "Buyers" on appeal, was not a party to the original lawsuit. Rather, her husband, LaVern Schramer, was listed. LaVern died after the lawsuit was filed, and Carol was added as a party.

2. The purpose of lis pendens or notice of lis pendens is to give effective notice to third persons of the pendency of litigation affecting

property. *UFG, LLC v. Southwest Corp.*, 784 N.E.2d 536, 545 (Ind.Ct.App.2003), *trans. denied.* The doctrine allows a party with an *in rem* interest in property, which is not otherwise recorded or perfected, to place that claim upon the public record and provide constructive notice to those dealing with the defendant. *Id.*

1. The primary issue to be decided in this action is the existence of a valid and enforceable contract for the sale of real estate for which specific performance may be ordered. The relief sought with respect to that issue involves only an order of specific performance; no damages issue is involved.

2. Damages are not allowed in an action for specific performance brought in Indiana. *Bohlin et al. v. Jungbauer et al.*, 615 N.E.2d 438 (Ind.App.1993). While the court may award equitable compensation incident to a specific performance decree, no damage award is available at law. As such, they will be unable to adduce the necessary evidence to allow the court to conduct any equitable accounting, assuming one is necessary, until the order of specific performance has been entered and effected, as the parties will be unable to fix their relative rights and obligations until that time. *Id.*

*Id.* at 34–35. In an order issued the same day, the trial court stated: "Upon motion of the parties, the issues of damages, attorney's fees, and other non-declaratory relief are hereby bifurcated for purposes of trial in the event the contract issues are decided against the defendant." *Id.* at 37.

After a final pre-trial conference, the trial court entered its Final Pre–Trial Order, which provided, in pertinent part:

### D. *Admissions/Stipulations.*

The parties have agreed to bifurcate the trial, separating the contract issue from the equitable accounting issues. Therefore, the issue before the Court at the trial scheduled for February 7 and 8, 2002 is whether there exists an enforceable contract, such that it allows the Plaintiffs to seek specific performance.

\*　　\*　　\*　　\*　　\*　　\*

### F. *Plaintiffs' Contentions.*

\*　　\*　　\*　　\*　　\*　　\*

5. [Buyers] are entitled to specific performance of the terms of the contract for the sale of [the Property].

6. [Buyers] are entitled to monetary and consequential damages proximately caused by the defendant's breach, including, but not limited to, lost profits.

*Id.* at 39. A bench trial was held on February 7–8, 2002. On March 12, 2002, the trial court entered judgment in favor of Seller and against Buyers, having found that there was not an enforceable contract between the parties.

After judgment was entered, Seller filed a Motion to Discharge Lis Pendens, and Buyers filed a Notice of Appeal. After a hearing on April 18, 2002, the trial court granted Seller's Motion to Discharge Lis Pendens. The next day, April 19, 2002, Seller and Tycor Development ("Tycor") completed a State of Indiana Sales Disclosure Form, a document that evidences the sale of the Property from Seller to Tycor. *See* Appellant's Supp.App. p. 5. On April 23, 2002, one of Seller's attorneys faxed the following notice to the attorneys for Buyers: "Please be advised that Southwest Corporation has now sold the property which was the subject matter of this suit." Appellee's App. p. 68. Buyers filed another notice of lis pendens regarding the Property on July 18, 2002.

On March 7, 2003, this Court issued its opinion in Buyers' appeal from the trial court's judgment in favor of Seller on the contract issue and from the trial court's order discharging the lis pendens notice regarding the Property. *UFG, LLC v. Southwest Corp.*, 784 N.E.2d 536 (Ind.Ct. App.2003), *trans. denied.* We held that the agreement between the parties was an enforceable contract for the sale of the

Property. *Id.* at 545. We also held that the trial court did not err in discharging the lis pendens notice. *Id.* at 546. Specifically, we stated: "If [Buyers] wished to preserve the status quo pending their appeal, the proper course of action would have been to apply for a stay of execution of the trial court's judgment pursuant to Indiana Trial Rule 62." *Id.* We concluded:

> Again, we reverse the judgment of the trial court regarding specific performance in accordance with the terms of the "acceptance letter," affirm the trial court's removal of the lis pendens notice, and remand for further proceedings consistent with this opinion and to determine the amount of damages, if any, due to [Buyers].

*Id.*

On remand, the trial court set a trial date of September 21, 2005. The parties filed motions to compel responses to interrogatories under Indiana Trial Rule 33 and requests for production under Indiana Trial Rule 34.[3] On October 29, 2004, the trial court entered an order granting both motions. Specifically, the court addressed its reading of the final paragraph of this Court's opinion in Buyers' appeal (which is reproduced in the preceding paragraph). The court explained:

> As this judge reads the Court's opinion, the question of whether the parties had a valid written contract has been judicially determined. They did. According to the February 2, 2002[4] Final Pre–Trial Order [Buyers have] two claims for relief, the first equitable (specific performance) and the second legal (money damages). The pertinent Contentions are 5. and 6. found on page 2:

> "5. [Buyers] are entitled to specific performance of the terms of the contract for the sale of [the Property].

> 6. [Buyers] are entitled to monetary and consequential damages proximately caused by [Seller's] breach, including, but not limited to, lost profits."

Trial Rule 18 permits joinder of such claims for relief. Footnote 2, on page 1179 of *Hollars v. Randall* (1990)[5] provides a succinct explanation:

> "Because the Hollars sought specific performance of the purchase agreement and 'liquidated damages,' the trial court was faced with the prospect of giving both equitable and legal relief. At common law, the plaintiff was required to elect between seeking relief in equity and relief in law. *See, Klingler v. Foster* (1938) 106 Ind.App. 98, 13 N.E.2d 906. However, the modern state of the law is not as precise. Ind.Trial Rule 18 allows parties to join their legal and equitable claims. Furthermore, courts acting in equity are entitled to grant complete relief."

Given what this judge finds currently at issue, both [Buyers'] and [Seller's] T.R. 33 and T.R. 34 discovery requests appear to be within the liberal guidelines set out in Trial Rule 26(B)(1).

Appellants' App. p. 51. At some point after entering this order, Judge Whitman retired and Judge Manier was assigned to the case.

On May 12, 2005, Buyers filed a Motion to Determine Issues for Trial.[6] A hearing

---

3. Neither of these motions is included in the record on appeal.

4. As noted above, the date on the Final Pre–Trial Order is actually February 7, 2002.

5. *Hollars v. Randall,* 554 N.E.2d 1177, 1179 n. 2 (Ind.Ct.App.1990).

6. The motion itself is not included in the record on appeal, but Buyers' memorandum in support of the motion is.

on this motion was held on June 2, 2005, after which the parties submitted memoranda. In their memorandum, Buyers asked the trial court "for an order specifying the issues to be determined at trial." *Id.* at 53. Buyers stated: "The issue now before this Court is whether [Buyers] can seek specific performance against the third party purchaser, Tycore [sic]." *Id.* at 54. Buyers then went on to discuss their rights in relation to Tycor as a third party purchaser and argued: "Since it is well established that a third party purchaser, with notice of a pending action for specific performance, takes subject to the risks of appeal, the issue before this Court is whether Tycore [sic] had notice of [Buyers'] appeal." *Id.* at 55.

The second section of Buyers' memorandum was labeled "[Buyers] Are Also Entitled To Damages Against Defendant, Irregardless [sic] Of Whether The Granting Of Specific Performance Against Tycore [sic] is Appropriate." *Id.* Referencing this Court's decision to remand this case "for further proceedings consistent with this opinion and to determine the amount of damages, if any, due to the appellants," *see UFG*, 784 N.E.2d at 546, Buyers argued: "The Court's ruling is consistent with well-established Indiana law that as part of a specific performance decree, the trial court may award equitable compensation to adjust the equities of the parties." *Id.* (citing *Bohlin v. Jungbauer*, 615 N.E.2d 438, 439 (Ind.Ct.App.1993)). Further, Buyers noted that "equitable compensation is considered an accounting between the parties, rather than an assessment of damages." *Id.* at 56.

Buyers continued: "Furthermore, in addition to the rental value of the property at issue, [Buyers] are also entitled to and will seek $395,000.00, representing [Seller's] increased profit in selling the property to Tycore [sic] for $3,200,000.00, after failing to sell the real estate to [Buyers] for the agreed upon price of $2,805,000.00." *Id.* (internal citations omitted). They concluded: "WHEREFORE, [Buyers] ... pray that this Honorable Court enter an order specifying that discovery and the issues to be determined at trial are limited to an assessment of damages against [Seller] and whether an order of specific performance against Tycore [sic], Ltd. is appropriate." *Id.*

On July 21, 2005, Judge Manier entered an Order on Buyers' Motion to Determine Issues for Trial, which provided, in pertinent part:

[Seller], not impermissibly, and with the acquiescence of [Buyers] through their failure to seek a stay, has disposed of [the Property] and no longer holds right, title or interest in and to that real estate. It is no longer possible for [Buyers] to secure specific performance of the contract against [Seller] and it is not possible for [Seller] to perform the contract.

\* \* \* \* \* \*

[Buyers] are not entitled to a hearing on damages. An equitable accounting (as distinct from damages) made [sic] be made by a court to adjust the equities of the parties when a decree of specific performance is entered, the former dependent on the entry of the latter. [Buyers] not being entitled to specific performance are similarly not entitled to a consideration of any claim for damages or equitable accounting. *[Humphries] v. [Ables]*, 789 N.E.2d 1025 (2003)[.]

\* \* \* \* \* \*

Finally, whether [Buyers] have a remedy against the current owner(s) is not a matter before the Court and this current owner or owner(s) are not parties to this action.

\* \* \* \* \* \*

IT IS THEREFORE DETERMINED that no issues remain to be tried between the parties.

*Id.* at 14–16. On July 27, 2005, at Seller's request, the trial court entered judgment in favor of Seller "on all pending claims". *Id.* at 18.

Buyers then filed a motion to correct error. Referring to the trial court's order of July 21, 2005, they argued:

The Court reasoned that since [Buyers] cannot prevail on Count I of the Complaint which seeks specific performance, they are not entitled to a hearing on damages, referred to in the Court's Order as "an equitable accounting." Clearly, the Court was discussing equitable damages which was part of the relief that could be awarded if specific performance had been granted. The court concluded its order by holding that no issue remains to be tried between the parties. Thus, without an opportunity to be heard or any discussion by this Court, the entire claim was dismissed which deprived [Buyers] of the opportunity to present evidence on Count II of the Complaint in which they seek damages for breach of contract—a legal remedy.

*Id.* at 62–63. The trial court then held a hearing on Buyers' motion. Seller contended that Buyers had elected their remedy by pursuing the specific performance claim to its conclusion and were barred from "trying to back up and try it out as a damages-for-breach-of-contract case." Motion to Correct Error Tr. p. 5. In a subsequent reply brief, Buyers urged that they had never elected a specific remedy,

arguing "that if this Court finds on an adequate record, that specific performance is not a viable remedy then, on proper proof, damages must be awarded to plaintiffs because the Court of Appeals . . . has already found that [Seller] breached its contract with plaintiffs!" Appellant's App. p. 72 (citing *Hudson v. McClaskey,* 597 N.E.2d 308 (Ind.1992)). In an order entered on October 28, 2005, the trial court denied Buyers' motion to correct error, stating:

[Buyers] litigated, fully, at trial, their claim for specific performance. . . . [Buyers'] [sic] elected their remedy (specific performance in lieu of damages) and tried that claim to completion. [Seller] no longer hold[s] title to the real estate at issue and performance of the contract is impossible, as the result of [Buyers'] failure to file an appeal bond. [Buyers] cannot now assert that they are only now electing their remedy (damages in lieu of specific performance) under the facts, as established by the trial transcript and admissions of counsel.

*Id.* at 19–20. Buyers now appeal.

**Discussion and Decision**

Buyers [7] raise two issues on appeal. First, they argue that the trial court erred in finding that specific performance is no longer possible. Second, they argue that the trial court erred in finding that Buyers elected specific performance as their remedy, thereby abandoning any claim for legal damages. There is no material dispute as to the relevant facts, so each of these issues presents a question of law.[8] We

---

7. Buyers actually filed two briefs on appeal. We will refer to the brief filed by UFG and David Henigan as "UFG & Henigan Br." and the brief filed by Carol Schramer and LaVern Schramer, Jr. as "Schramer Br." UFG and Henigan also filed a reply brief, which we will refer to as "Appellants' Reply Br."

8. Buyers and Seller dispute the date on which Seller sold the Property to Tycor. For purposes of this appeal, it only matters that the land was sold. The date of sale would only be significant if Buyers seek to take the Property back from Tycor, as it is relevant to whether Tycor was on notice of the litigation when it

review questions of law *de novo. Kopetsky v. Crews,* 838 N.E.2d 1118, 1123 (Ind. Ct.App.2005).

## I. Availability of Specific Performance as a Remedy

■ Buyers first argue that Seller's sale of the Property to Tycor does not preclude an order of specific performance. We cannot agree. "The grant of specific performance directs the performance of a contract according to the precise terms agreed upon, or substantially in accordance therewith." *Wenning v. Calhoun,* 811 N.E.2d 933, 935 (Ind.Ct.App.2004), *trans. denied.* It is axiomatic that courts of equity will only order specific performance when the contract is capable of being performed. *Heritage Dev. Of Ind., Inc. v. Opportunity Options, Inc.,* 773 N.E.2d 881, 893 n. 5 (Ind.Ct.App.2002), *reh'g denied, trans. dismissed; Bryan Mfg. Co. v. Harris,* 459 N.E.2d 1199, 1201 (Ind.Ct. App.1984); *Spoden v. Krause,* 117 Ind. App. 14, 18, 68 N.E.2d 654, 656 (1946); *Cline v. Strong,* 52 Ind.App. 286, 100 N.E. 569 (1913). For example, "[a] court may not grant specific performance when the subject matter of the contract no longer exists or is beyond the control of the parties." *Risk v. Thompson,* 237 Ind. 642, 651, 147 N.E.2d 540, 545 (1958). The subject matter of a contract is "beyond the control of the parties" when it is sold to an unrelated third party. *Heritage Dev. of Ind.,* 773 N.E.2d at 893 n. 5. Here, the Property was sold before this Court remanded the case to the trial court, so it is beyond the control of the parties and the court may not grant specific performance.[9]

## II. Election of Remedies

■ Buyers argue that even if specific performance is not possible, they should be able to pursue their alternative remedy of legal damages. In response, Seller contends that the trial court was correct to hold that Buyers are precluded from now seeking legal damages because they elected the remedy of specific performance and prosecuted it to a conclusion. We cannot agree.

■ The election of remedies doctrine provides that where a party has two coexisting but inconsistent remedies and elects to prosecute one such remedy to a conclusion, he may not thereafter sue on the other remedy. *Cahoon v. Cummings,* 734 N.E.2d 535, 542 (Ind.2000). Buyers do not dispute that specific performance and legal damages are inconsistent remedies. Rather, they argue that they never elected

purchased the Property. Because Tycor is not a party to this action, we need not make any further mention of the date of the sale. *See* footnote 9, *infra.*

9. Buyers, in an attempt to avoid this general rule, cite several Indiana cases that stand for the general proposition that a third party who purchases property with notice of ongoing litigation concerning the property takes the property subject to the outcome of any appeal. This argument concerns Buyers' rights in relation to Tycor as a third-party purchaser. However, Tycor is not a party to the instant litigation. The only defendant is Seller, and because Seller no longer controls the Property, specific performance as against it is an impossible remedy.

Even still, Buyers cite this Court's decision in *North v. Newlin,* 416 N.E.2d 144 (Ind.Ct. App.1981), for the proposition that "an action in specific performance is not subject to the defense of impossibility of performance on the mere basis that defendant sold the property to a third-party." Schramer Br. p. 6. They state the holding from that case too broadly. We merely held that specific performance was not impossible in a case involving an alleged third-party purchaser because the evidence presented did not establish that the property had in fact been sold to the third-party purchaser as of the time of trial. *Id.* at 151. Here, Buyers do not dispute that Seller sold the Property to Tycor. *See* Appellants' Reply Br. p. 10 n. 5.

specific performance to the exclusion of legal damages. The Indiana Supreme Court addressed the election of remedies doctrine in a similar factual context in *Hudson v. McClaskey,* 597 N.E.2d 308 (Ind.1992), and we agree with Buyers that our resolution of this appeal is controlled by that case. Because of the parallels between the cases, a thorough review of the factual and procedural history of *Hudson* is appropriate.

In 1983, the Hudsons conveyed a parcel of real estate to McClaskey by a warranty deed, but the warranty deed did not reveal the existence of an easement the State had previously acquired over the real estate. McClaskey filed a claim against the Hudsons asserting breach of warranty of title, rescission, and damages for expenses in defending the title. The trial court found that the Hudsons did not breach their warranty of title and granted their motion for summary judgment. On appeal, this Court reversed the trial court, finding that the Hudsons breached their warranty of title because their deed failed to disclose the State's easement. *McClaskey v. Bumb & Mueller Farms, Inc.,* 547 N.E.2d 302 (Ind.Ct.App.1989), *trans. denied.*

On remand, the trial court entered summary judgment in favor of McClaskey on the issue of breach of warranty of title. McClaskey tendered the deed to the Hudsons and, at a bench trial held to determine the appropriate remedy, argued solely for rescission. The trial court then granted rescission, held that the Hudsons were the owners of the property, and awarded $93,945.71 to McClaskey. After the Hudsons appealed, this Court held that rescission was an improper remedy because the parties could not be restored to the status quo because McClaskey made substantial alterations to the property after taking title. *Hudson v. McClaskey,* 583 N.E.2d 1228, 1232 (Ind.Ct.App.1992).

Furthermore, the majority held that McClaskey elected rescission as his remedy by tendering the deed back to the Hudsons and arguing solely for rescission at trial, thereby abandoning any claim for damages for breach of warranty of title. *Id.* Therefore, McClaskey was left with no remedy for the Hudsons' breach of warranty.

Judge Baker agreed with the majority that rescission was an improper remedy because of the alterations McClaskey made to the property after taking title. He disagreed, however, with the majority's conclusion that McClaskey abandoned the claim of damages for breach of warranty. Dissenting, he wrote: "It is true McClaskey *preferred* rescission as a remedy for the breach of warranty he suffered. He did not limit his prayer for relief to this remedy alone, however." *Id.* (Baker, J., dissenting) (emphasis added). Judge Baker stressed that in his prayer for relief, McClaskey "sought both rescission and 'all other further and proper relief.'" *Id.* at 1233. In language particularly applicable to the instant case, Judge Baker concluded:

McClaskey did not elect one remedy in the sense of abandoning the other, as the majority claims. He prosecuted both remedies available to him.

\*     \*     \*     \*     \*     \*

In my opinion it is unconscionable to deny McClaskey a remedy for the loss he incurred.... The denial of both remedies of rescission and damages, in light of the undisputed breach of warranty, is a miscarriage of justice we should not condone. Although I agree the trial court erred in ordering rescission, I would remand the cause to determine damages incident to the Hudsons' breach of warranty, including considerations such as diminution in the value of the property, the cost of defending title,

tax payments, filling expenses, and crop revenue.

*Id.*

On transfer, a 3–2 majority of the Indiana Supreme Court disagreed "with the Court of Appeals holding that [McClaskey] abandoned any claim for damages when he elected rescission as his remedy." *Hudson v. McClaskey,* 597 N.E.2d 308, 309 (Ind.1992). After noting Judge Baker's comment that it would be "unconscionable to deny McClaskey a remedy for the loss he incurred," the Court held: "Inasmuch as the Court of Appeals determined that rescission was improper, a decision with which we agree, it is also proper that [McClaskey] may then be awarded damages for the breach of warranty." [10] *Id.* The Court directed the trial court "to conduct a hearing to determine all proper damages to be awarded to [McClaskey] resulting from [the Hudsons'] breach of warranty." *Id.*

The *Hudson* saga is closely analogous to the case at hand. In both cases the buyer sought both equitable and legal remedies: in *Hudson,* "McClaskey sought both rescission *and* 'all other further and proper relief[,]' " 583 N.E.2d at 1232 (Baker, J., dissenting), and here, Buyers, with much greater specificity than McClaskey, sought specific performance in Count I of their Complaint and legal damages in Count II. Likewise, in both cases the buyer at some stage of litigation prevailed in seeking his preferred equitable remedy: in *Hudson,* the trial court granted rescission, and

here, this Court reversed the trial court's denial of Buyers' request for specific performance. Finally, in both cases the buyer eventually learned that his preferred remedy was no longer available: in *Hudson,* because this Court determined that alterations to the property made rescission impossible, and here, because the trial court determined that the sale of the property to a third party made specific performance impossible.

Buyers are entitled to an opportunity to prove any damages they suffered as a result of Seller's breach of contract. "To hold otherwise would be to permit a doctrine of equitable origin to be used to accomplish an inequitable result." *Ludlow v. Free,* 222 Ind. 568, 582, 55 N.E.2d 318, 324 (1944). Indeed, to hold otherwise would be to sanction a situation in which a court orders a plaintiff who has won a judgment to choose between two inconsistent remedies, then waiting until *after* she has made that election to inform her that her preferred remedy was never actually available, and that *furthermore,* the instant she announced her preference, the alternate remedy became similarly unavailable, leaving her with no remedy. Borrowing from Judge Baker's dissent in *Hudson,* the denial of both remedies of specific performance and legal damages under the circumstances before us is a miscarriage of justice we should not condone. *See Hudson,* 583 N.E.2d at 1233 (Baker, J., dissenting).

**10.** In support of this holding, the Court cited *Nysewander v. Lowman,* 124 Ind. 584, 24 N.E. 355 (1890), in which it held that a plaintiff may amend his complaint so as to change it from an action for the rescission of a contract to one for damages for the fraud in procuring such contract. The Court also cited Indiana Code § 26–1–2–720, which provides: "Unless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the

contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach," and Indiana Code § 26–1–2–721, which is entitled "Remedies for fraud" and provides, in pertinent part: "Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy."

■ Seller contends that *Hudson* is distinguishable from the instant case. First, it argues that here, "there is no fraud, misrepresentation, or breached warranty of any kind." Appellee's Br. p. 20. We first note that neither fraud nor misrepresentation was at issue in *Hudson*. Furthermore, the fact that *Hudson* concerned the breach of a warranty in a real estate deed while the instant case concerns a breach of a real estate contract is irrelevant. The election of remedies doctrine is not as much concerned with the specific theories of recovery pleaded as it is with the inconsistency between those theories. In other words, the election of remedies doctrine stands for the same principle whether the theories are (1) rescission and damages for breach of warranty, as in *Hudson*, or (2) specific performance and damages for breach of contract, as we have here.

■ Second, Seller suggests that "[i]n *Hudson*, McClaskey had not stipulated that 'no damages award is available at law,' as [Buyers] did in this case." *Id.* Seller is referencing the parties' Stipulated Motion to Bifurcate Trial, and the quoted clause actually followed and reiterated the previous sentence in the stipulation: "Damages are not allowed in an action for specific performance brought in Indiana." Appellant's App. p. 34. This statement is true. However, far from representing an election of remedies by Buyers, the statement is a mere recognition of the inconsistency between the remedies of specific performance and legal damages for breach of contract. Furthermore, to the extent that the parties' Stipulated Motion to Bifurcate Trial is limited to the issue of specific performance, we emphasize that our Supreme Court allowed the buyer in *Hudson* (McClaskey) to later seek legal damages after arguing *solely* for rescission at trial. *Hudson*, 597 N.E.2d at 309; *see also Hudson*, 583 N.E.2d at 1232.

■ Third, Southwest argues that while there was no final pre-trial order to be considered in *Hudson*, the pleadings in the instant case "were merged into the final pretrial order, which only sets forth a claim for specific performance and equitable accounting." Appellee's Br. p. 21. It is true that "a pre-trial order delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case." *Rust–Oleum Corp. v. Fitz*, 801 N.E.2d 754, 758 (Ind.Ct.App.2004), *trans. denied.* However, the final pre-trial order, like Buyers' complaint, included a claim for money damages arising from Seller's breach; Plaintiffs' Contention 6 provides: "[Buyers] are entitled to monetary and consequential damages proximately caused by the defendant's breach, including, but not limited to, lost profits." Appellants' App. p. 39. Therefore, the "doctrine of merger," as Seller labels it, creates no meaningful distinction between *Hudson* and this case.

■ Fourth and finally, Southwest claims that Buyers "never raised a claim for damages at law until [their] Motion to Correct Error[,]" thereby waiving any such claim. Appellee's Br. p. 12, 21. Again, it is true that "[a] party may not raise an issue for the first time in a motion to correct errors." *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind.Ct.App.2002). Buyers raised a claim for damages in Count II of their Complaint, but Seller contends that the damages Buyers sought represent the "equitable compensation" sometimes awarded incident to an order of specific performance rather than legal damages related to a breach of contract. We cannot agree.

This Court has addressed the distinction between equitable compensation and legal damages on several occasions. Specific performance erases the breach and precludes damages at law, but as part of a specific performance decree, a trial court may award equitable compensation to adjust the equities of the parties. *Bohlin v. Jungbauer,* 615 N.E.2d 438, 439 (Ind.Ct.App.1993) (citing *North v. Newlin,* 435 N.E.2d 314, 319 (Ind.Ct.App.1982)). Equitable compensation is a money payment that adjusts the rights of the parties and equalizes any losses occasioned by the delay in performance of a contract. *Id.* This award is not for a breach of contract and is therefore not legal damages, but rather is considered an accounting between the parties. *Id.; Kesler v. Marshall,* 792 N.E.2d 893, 897 (Ind.Ct.App. 2003), *reh'g denied, trans. denied.* Legal damages for breach of contract, on the other hand, are "such damages as may fairly and reasonably be considered as arising naturally from the breach itself, or as may be reasonably supposed to have been within the contemplation of the parties at the time they entered into the contract as a probable result of the breach." *Fairfield Dev., Inc. v. Georgetown Woods Senior Apartments Ltd. P'ship,* 768 N.E.2d 463, 473 (Ind.Ct.App. 2002), *trans. denied.*

At least some of the damages sought by Buyers in Count II of their Complaint represent legal damages, not equitable compensation. Specifically, Buyers seek damages for loss of future revenue and appreciation in the value of the property. These are not losses occasioned by the *delay* in performance of a contract, which could be equalized by an award of equitable compensation, *see Bohlin,* 615 N.E.2d at 439, but by the complete absence of performance, i.e., a breach of contract. A payment for loss of future revenue and appreciation would be inconsistent with an order for specific performance. Therefore,

Seller's claim that Buyers did not raise a claim for damages at law until their motion to correct error is without merit. Buyers have not waived that claim.

As a final note, it appears that the confusion in this case is rooted in part in Judge Whitman's retirement and Judge Manier's subsequent appointment. Indeed, on October 29, 2004, in his last order in this case before his retirement, Judge Whitman, in granting the parties' respective motions to compel discovery, acknowledged that "[Buyers have] two claims for relief, the first equitable (specific performance) and the second legal (money damages)." Appellant's App. p. 51. Then, on July 21, 2005, in her first order after being appointed, Judge Manier concluded that because specific performance, and therefore an equitable accounting, was no longer available, "no issues remain to be tried between the parties," without even mentioning Buyers' claim for legal damages. *Id.* at 11–16.

We remand this cause with instructions to the trial court to conduct a hearing to determine the legal damages to be awarded to Buyers as a result of Seller's breach of contract.

**Conclusion**

The trial court correctly found that specific performance is no longer available to Buyers as a remedy. However, the trial court erred in finding that Buyers elected specific performance to the exclusion of their alternately-pleaded remedy of legal damages. Therefore, we remand this cause with instructions to the trial court to determine Buyers' legal damages.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, J., and MATHIAS, J., concur.