ESTATE OF Jane H. COLLINS, Appellant,

v.

T. William McKINNEY, Appellee.

No. 02A05–1004–EU–286.

Court of Appeals of Indiana.

Oct. 22, 2010.

See also 871 N.E.2d 363.

---

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, IN, Attorney for Appellant.

John C. Theisen, Theisen Bowers & Associates, LLC, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

The Estate of Jane Collins ("Estate" or "Collins Estate") appeals from summary judgment granted to T. William McKinney ("McKinney") on his Petition for Specific Performance of an Option and Purchase Agreement, and from the trial court's determination of damages awarded after a bench trial.

We affirm in part, reverse in part, and remand.

### Issues

The Estate presents five issues for our review, which we reorder and restate as:

I. Whether the trial court erred in granting McKinney's motion for summary judgment;

II. Whether the trial court erred in finding that the Estate's personal representative had breached the option;

III. Whether the trial court erred in awarding McKinney damages for losses arising from the delay in his purchase and subsequent sale of the real estate;

IV. Whether the trial court erred in its determination of the amount of damages; and

V. Whether the trial court erred in awarding McKinney attorney's fees for bad faith.

### Facts and Procedural History

#### The Options and Leases

On December 27, 1990, McKinney entered into an option to purchase from Robert and Jane Collins (collectively, "the Collinses") certain real estate in Fort Wayne, Indiana, upon which the Collinses had a car dealership ("the Option" or "the 1990 Option"). Among its terms, the Option required that McKinney deliver written notice of his intent to exercise the Option to the "Personal Representative ... or heirs-at-law" within ninety days of the death of the last to die of Robert and Jane Collins. (App. 31.) After this time, the Option would terminate. The Option specified a purchase price of $2,090,000 for the land, subject to any required adjustments as set forth in the Option, and required that the parties close the sale within 120 days of McKinney's exercise of the Option. The Option also provided the legal description of the land in an exhibit.

On November 23, 1999, McKinney entered into a lease with the Collinses for use of the subject real estate ("the Prime Lease"). On the same date, McKinney granted a sublease to Tomkinson Chrysler Jeep, Inc. ("Tomkinson") for that same land ("the Sublease"). The Sublease granted Tomkinson an option to purchase the subject real estate conditioned, in part, upon the death of the last of the Collinses to survive if McKinney himself predeceased the Collinses. The Collinses signed the Prime Lease and executed a separate consent to the Sublease with an acknowledgement of the conditional option in the Sublease.

At the same time as the execution of the Prime Lease and Sublease, McKinney and the Collinses executed a new Exhibit A to the 1990 Option. The new Exhibit provided a legal description of the subject real estate reflecting Robert Collins's grant of land to the City of Fort Wayne in 1994.

#### The 2004 Suit

On August 19, 2004, after the death of Robert Collins, Jane Collins provided notice to McKinney through counsel that she

deemed certain of his actions to violate the terms of the Prime Lease and Sublease. Unable to resolve the matter with Jane Collins, McKinney filed a Complaint for Declaratory Judgment against Jane Collins, seeking a declaration that (1) McKinney did not require Jane Collins's consent to assign the Tomkinson sublease to Glenbrook Dodge, Inc.; (2) the Prime Lease, Sublease, and Option were valid and legitimate agreements and not subject to avoidance for undue influence, failure of consideration, or lack of consideration; and (3) McKinney was not in breach of the Prime Lease or Sublease.[1] Jane Collins in turn sought to void the Prime Lease and Sublease, alleging undue influence, constructive fraud, lack of consideration, and failure of consideration, or in the alternative to obtain judgment against McKinney for breaching these agreements. Jane Collins also sought to void the Option for lack of consideration and undue influence.

McKinney moved for summary judgment, which the trial court granted on the questions of undue influence in obtaining Jane Collins's signature on the Option, failure of consideration for the Option, and the existence of valid consideration for the Option. The interpretation of the Prime Lease and Sublease and whether McKinney had breached these agreements were addressed at the first trial and upon a prior appeal, but are not material to the case before us. *See Collins v. McKinney*, 871 N.E.2d 363 (Ind.Ct.App.2007).

### The Instant Case

Jane Collins died on June 2, 2007. McKinney sought to exercise the Option in a letter dated July 27, 2007, and attempted to serve the letter bearing notice of his intent via U.S. Mail, United Parcel Service ("UPS"), and hand-delivery to Ray Collins, Robert and Jane Collins's son, in his capacity as Personal Representative for Jane Collins's estate. McKinney did not receive a response to these notices.

McKinney filed his Verified Petition for Specific Performance on October 31, 2007, seeking to require the Estate to respond to his notice of intent to exercise the Option and to sell the property at issue in the Option. In its response the Estate acknowledged its refusal to respond to McKinney's notice and alleged as affirmative defenses that (1) McKinney's notice was not consistent with the requirements for notice in the Option; (2) the legal description attached to the Option was "improper, vague, and is believed to have been altered" after execution of the Option (App. 64); and (3) any rights McKinney had under the Option were terminated due to breach of the Prime Lease.

On May 8, 2008, McKinney moved for summary judgment, submitting at the same time his designation of evidence and supporting brief. The Estate moved to strike certain of McKinney's exhibits, designated its claimed issues of material fact, and responded to the merits of McKinney's motion on June 30, 2008.

The trial court heard argument on the motions on July 3, 2008. The court struck one affidavit, denied the Estate's motion to strike two additional exhibits, and took the motion to strike under advisement for the remaining exhibits the Estate opposed. The motion for summary judgment was also taken under advisement. The court granted McKinney seven days to submit additional documentation in support of

---

1. The Complaint referenced is not the subject matter of the instant appeal, though certain of its results bear upon the facts and law in this appeal. Proceedings at the trial level were conducted in the Allen County Superior Court under Cause Number 02D01–0409–PL–416. An appeal was conducted in this Court under Case Number 02A04–0607–CV–380, and our opinion in that case is *Collins v. McKinney*, 871 N.E.2d 363 (Ind.Ct.App.2007).

these exhibits, and granted the Estate an additional seven days beyond that to respond to that submission. McKinney filed an affidavit in support of the remaining exhibits on July 9, 2008; the record is devoid of any response from the Collins Estate.

On August 18, 2008, the court granted summary judgment to McKinney and ordered the Estate to close the sale pursuant to its award of specific performance to McKinney. The court reserved the issue of damages for later adjudication and gave McKinney leave to submit an additional petition for payment of damages.

On November 24, 2008, McKinney filed a Verified Information for Rule to Show Cause why Ray Collins should not be held in contempt of court for refusal to comply with the trial court's order for specific performance. After hearing evidence, on January 15, 2009, the Court appointed Lake City Bank as Special Administrator for the purposes of specific performance of the Option. The court suspended Ray Collins as the Estate's Personal Representative at that time. On February 2, 2009, Ray Collins was reinstated as Personal Representative for all but the real estate under the Option, and the court directed Lake City Bank to retain proceeds from the sale of the land until further order. Lake City Bank filed a notice of sale with the Court on April 3, 2009, one day after the Estate filed a motion to declare the Option void for failure to close the sale.

On May 1, 2009, McKinney filed his petition for an award of damages and expenses with the court.

On January 19, 2010, a bench trial was held to determine McKinney's damages. On March 25, 2010, after the parties submitted post-trial briefs and proposed findings of fact and conclusions of law, the trial court ruled in favor of McKinney, award-ing him damages and fees of $760,084.33 plus costs and attorney's fees.

This appeal followed.

Additional facts will be supplied as required.

## Discussion and Decision

### Motion for Summary Judgment

■■■ The Collins Estate claims two errors should have precluded summary judgment. First, the Estate asserts that Trial Rule 56(E) restricts the trial court from using McKinney's exhibits and from allowing McKinney to submit additional documentation in support of its exhibits. Second, the Estate asserts that even if that evidence was properly designated and admissible, genuine issues of material fact remained as to the accuracy and authenticity of the legal description attached to the Option, thereby precluding a grant of summary judgment in McKinney's favor. Because the Estate fails to make citations to authority or the record or otherwise adequately articulate its argument on its second point beyond repeating the import of its affirmative defenses, its contention on this issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a). We thus consider only the Estate's articulated and developed argument that the trial court abused its discretion in the admission of summary judgment materials.

The Estate claims that the trial court erred in permitting McKinney to file a post-hearing affidavit in support of his motion for summary judgment. The Estate relies on Trial Rule 56(E), which states in part that "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached" to such affidavits. The Estate urges that the trial court should have disregarded McKinney's evidence in support of his motion for summary judgment because he designated uncertified

supporting documents. The Estate then goes on to assert that, without these documents as evidence, McKinney could not have met his burden of production and therefore was not entitled to summary judgment.

■ We reject the Estate's conclusion that McKinney's exhibits should have been excluded. First, we note that Rule 56(E) permits supplementing affidavits with "further affidavits," and that (as with most evidentiary matters) such a decision lies "within the trial court's discretion." *Indiana Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind.2000) (citations omitted).[2] As permitting the submission of supplemental affidavits falls within the sound discretion of the trial court, we review such a decision for an abuse of discretion. "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Logan*, 728 N.E.2d at 859 (citing *Vernon v. Kroger Co.*, 712 N.E.2d 976, 982 (Ind.1999)).

The trial court's decision did not constitute an abuse of discretion. The trial court was particularly troubled by the Estate's "form over substance" insistence that McKinney's designated evidence be excluded from consideration, (Summary Judgment Tr. 7) because the Estate sought to preclude the trial court from considering documents the Estate's attorney had drafted and filed with the trial court in prior litigation against McKinney.[3] Moreover, the Estate was not prejudiced by the trial court's decision: McKinney's supplemental affidavit presented no new substantive evidence, the Estate had already addressed the previously designated evidence in its brief, and the Estate failed to renew its motion to strike upon McKinney's submission of the supplemental affidavit. *See Logan*, 728 N.E.2d at 860 (holding no prejudice occurred when supplemental affidavits of a substantive nature were submitted after the time for a non-movant's response had elapsed and the parties had ample opportunity for prior discovery).

The trial court did not abuse its discretion when it permitted McKinney to submit the supplemental affidavit in support of his motion for summary judgment. Because the Estate has failed to develop any other argument it might have made to challenge the summary judgment in its briefs, we affirm the trial court's summary judgment on the effectiveness of the Option and validity of the legal description, and we further affirm the trial court's award of specific performance to McKinney.

### The Trial Court's Finding on Breach of the Option

■ We turn next to the Estate's contention that the trial court erred when it found after trial that the Estate's personal representative breached the Option contract. The Estate claims that Ray Collins did not default on the terms of the Option because McKinney did not tender the purchase price, thereby failing to make the Option enforceable against the Estate.

■ A trial court may enter findings of fact and conclusions of law *sua sponte*. Though the trial court here requested proposed findings and conclusions and post-trial briefs from the parties, the CCS and

---

**2.** Indeed, even affidavits filed by a movant the day before trial to supplement an original, timely-filed affidavit may be considered by the trial court. *Pekin Ins. Co. v. Charlie Rowe Chevrolet, Inc.*, 556 N.E.2d 1367, 1369 (Ind. Ct.App.1990).

**3.** Many of these documents were filed in the case that has already been appealed to this court in *Collins v. McKinney, supra.*

appendix reveal no written motion for entry of specific findings and conclusions; thus, we treat the trial court's entry of findings and conclusions as *sua sponte.*

A review of findings of fact and conclusions of law that are issued *sua sponte* is based upon the same standard as a review of findings and conclusions issued upon a party's written request. We may affirm the judgment on any legal theory supported by the findings. In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. In reviewing the judgment, we first must determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. When findings or conclusions are entered *sua sponte,* however, the specific findings control only as to the issues they cover, while the general judgment standard applies to any issue upon which the court has not found.

*Mullis v. Brennan,* 716 N.E.2d 58, 62 (Ind. Ct.App.1999) (citations omitted); *see also* Ind. Trial Rule 52(A). We review conclusions of law *de novo. Beam v. Wausau*

*Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.*

■■■ The Estate argues that Ray Collins cannot have breached the Option because McKinney did not tender performance through payment of the purchase price, and as a result the Option was not enforceable against the Estate. Yet Indiana law does not require a tender of performance before an optionor is in default. "An option is a continuing offer whose duration and method of exercise is strictly controlled by the agreement that created it." *Beiger Heritage Corp. v. Estate of Kilbey,* 667 N.E.2d 184, 186 (Ind.Ct. App.1996) (citations omitted), *trans. denied.* "Generally, the exercise of an option is effective only if it strictly adheres to the terms stipulated in the contract." *North Side Asphalt & Material Transp., Inc. v. Foreman,* 520 N.E.2d 457, 459 (Ind.Ct. App.1988) (citations omitted), *trans. denied.* Thus, the general rule is that the optionee must strictly adhere to the option's requirements for its exercise in order to bind the optionor.

While the Estate is correct that no rule has been articulated in Indiana directly on the question of whether an option is binding only upon tender of performance, both the general rule and specific cases undercut the Estate's reliance on cases from other jurisdictions. In *Wolvos v. Meyer,* our supreme court affirmed a trial court's decision that Wolvos had failed to comply with the terms of an option for the purchase of real estate when she refused to sell land to Meyer. 668 N.E.2d 671 (Ind. 1996). The trial court's order of specific performance requiring Wolvos to enter into a purchase agreement with Meyers was affirmed where the option specified that it was to be exercised in writing and Meyers had given such written notice without also tendering performance in the

form of paying the agreed-upon purchase price. *Id.* at 672–74, 78.

Here, the Option specified the method of exercise: McKinney was required to provide proper written notice to the personal representative of the estate, that is, Ray Collins. McKinney gave proper notice, and counsel for the Estate admitted as much during the summary judgment hearing, saying "Notice was properly given." (Summary Judgment Tr. 22.) Ray Collins as Personal Representative for the Estate was thus bound to perform the Estate's obligations under the Option and, failing to do so, breached the Option.

The Estate points to a series of cases, largely from outside Indiana, where other states require tender of performance by the optionee prior to claiming the optionor has defaulted on an option. The Estate claims to have been unable to find a case on-point in Indiana, but seeks support (without much explanation) from our decision in *Pinkowski v. Calumet Township of Lake County*, 852 N.E.2d 971 (Ind.Ct.App. 2006), *trans. denied.* Presumably, the Estate hopes that we will read the statement that "[a] party seeking specific performance of a real estate contract must prove that he has substantially performed *or offered to do so*" in its favor. *Id.* at 982 (citing *UFG, LLC v. Southwest Corp. (UFG I)*, 784 N.E.2d 536, 543 (Ind.Ct.App. 2003)) (emphasis added). We cannot adopt such an interpretation. That *Pinkowski* requires either performance or an offer of performance further undercuts the Estate's argument in that *Pinkowski* states directly that performance is not necessary to bind the optionor, so long as the optionee offers performance.

Proper notice is all that was required to exercise the Option, and McKinney gave proper notice to Ray Collins. Since there is no requirement of tender of performance before an option becomes binding upon the optionor, and since the Option itself did not require tender of performance, the trial court did not err in finding that Ray Collins had breached the Option. We therefore affirm the trial court's ruling on Ray Collins's breach of the Option.

### The Trial Court's Award of Damages in Addition to Specific Performance

■ The Estate argues that, even if Ray Collins breached the Option, the trial court erred as a matter of law when it awarded monetary compensation to McKinney because McKinney sought and the court awarded specific performance. As noted above, we review conclusions of law *de novo.*

■■ This court has previously dealt with confusion on the question of monetary awards in conjunction with an award of specific performance. *See, e.g., North v. Newlin*, 435 N.E.2d 314, 319 (Ind.Ct.App. 1982) (noting the confusion that may arise from characterizing such awards as "damages").[4] While specific performance "erases the breach and precludes damages at law," an award of specific performance does not necessarily foreclose a monetary award. *Bohlin v. Jungbauer*, 615 N.E.2d 438, 439 (Ind.Ct.App.1993). Specific performance "enforces the contract," but must do so "as nearly as possible ... in accordance with its terms. [O]ne of those terms is the date fixed ... for its completion ... [and] the court, in order to relate the performance back to it, equalizes any losses ... with money payments." *Id.* (internal quotations and citations omitted).

■ Enforcement of a contract through specific performance permits an equitable accounting, but an award of dam-

---

**4.** *North* acknowledges that courts have incorrectly but harmlessly used "damages" where "equitable compensation" is the proper terminology, 435 N.E.2d at 319.

ages at law does not. *UFG, LLC v. Southwest Corp. (UFG II )*, 848 N.E.2d 353, 365 (Ind.Ct.App.2006), *trans. denied.* To obtain payment of equitable compensation, a party entitled to specific performance must establish facts to meet certain criteria. Time must be of the essence in the contract, with the court looking to the terms of the agreement or the conduct of the parties as evidence of this. *Id.* at 440–41. In addition, the expenses or other losses for which money is to be paid must "be fairly and reasonably considered as naturally arising from a breach of contract, according to the usual course of things." *Id.* at 440. "[E]xpenses ... from special circumstances are not recoverable unless" the breaching party knew or had such circumstances communicated to it, following the rule in *Hadley v. Baxendale. Id.* (citing, *inter alia, Hadley v. Baxendale*, 9 Exch. 341, 5 E.R.C. 502 (1854)).

The *Bohlin* case provides a helpful analog to the situation at hand. In *Bohlin,* the Jungbauers entered into an agreement to purchase a residence from the Bohlins. The Bohlins failed to correct defects in the title of the property within a reasonable period of time of the agreed-upon closing date. In an action for specific performance, the trial court granted the Jungbauers' motion for summary judgment and awarded specific performance and damages for expenses. *Bohlin*, 615 N.E.2d at 439. Upon appeal, we reversed the trial court as to its award of damages, holding that "the trial court failed to conduct an accounting" and "should have treated the Jungbauers as if they had owned the residence from the closing date, and allowed them to receive the reasonable rental value of the residence." *Id.* at 440. We also held that the Jungbauers were "required to pay interest on the purchase price from the date of closing." *Id.* Finally, we required that credit be given to either party to the extent of any expenses incurred related to maintenance, insurance premiums, taxes, etc. *Id.*

Given this background, we cannot agree with the Estate that McKinney was not entitled to any form of monetary compensation. The trial court's order awards "damages for Ray Collins' breach of the Option Agreement," (App. 20) but the mere use of the word "damages" by the trial court does not of itself defeat the availability of equitable compensation. *See North,* 435 N.E.2d at 319. Moreover, paragraph 20 of the Option states that McKinney and the Collinses agreed that time was of the essence, thus meeting this requirement for equitable compensation in the form of a monetary award. *See Bohlin,* 615 N.E.2d at 440–41.

The Estate calls our attention to the fact that, in his verified petition, McKinney did not make a specific request for damages or equitable compensation. Yet even when a court sitting in equity decides rights that "are strictly legal," equity jurisdiction "ends only with a complete adjustment of the rights of the parties and the award of full relief." *Lewandowski v. Beverly,* 420 N.E.2d 1278, 1282 (Ind.Ct.App.1981). McKinney requested, in addition to the equitable remedy of specific performance, "an award commensurate with his costs and expenses incurred in this matter, and *for all other just and proper relief in the premises."* (App. 29; emphasis added.) Given his prayer for relief and an equity court's obligation to "award full relief," *Lewandowski,* 420 N.E.2d at 1282, McKinney has not limited his remedies or foreclosed the possibility of monetary relief through equitable compensation.

We therefore hold that the trial court did not err as a matter of law when it awarded McKinney monetary compensation.

### The Trial Court's Calculation of "Damages"

■■■ As noted above, monetary compensation accompanying an award of specific performance is intended to adjust the equities between the parties through an accounting. Because each case is different, the form, amount, and basis for equitable compensation will differ in each case.

The trial court, in assessing damages "for breach of the Option agreement," (App. 24) based its monetary award on the reduction in the price McKinney expected to receive in his own sale of the real estate. Based on the date of his notice to Ray Collins that he had elected to exercise the Option, McKinney had expected to close on the real estate on or about November 26, 2007, paying the agreed-upon price of $2,090,000. He then expected to quickly sell the property to Doug McKibben ("McKibben") or a company owned by McKibben for $3,000,000. Having been delayed by Ray Collins's breach, McKinney instead closed on the real estate in April 2009, and quickly sold the property to a company owned by McKibben, Coldwater/Collins Property, LLC, for $2,400,000. The court thus determined that McKinney was entitled to $600,000 in damages as the difference between the expected sale price in 2007 and the actual sale price in 2009. The court also awarded prejudgment interest of $145,493.33 on a combination of the difference between McKinney's purchase price and expected sale price and McKinney's loss of use of $600,000.00 as the difference in the expected and actual sale prices.

It is not clear to us that this is the appropriate measure of equitable compensation. In *Bohlin* we instructed the lower court that the appropriate measure of compensation was the reasonable rental value of the property for the duration of the period of delay due to breach, less any improvements made by the sellers and/or interest on the purchase price from the retrospectively-set closing date. *Bohlin*, 615 N.E.2d at 440. This amount compensated the buyers for loss of the reasonable value of the residence for the period before the specific performance order during which they should have owned but did not own the residence, with credit given to the sellers for any improvements made.

■■■ The remedy ordered by the trial court here, on the other hand, compensates McKinney for the loss of his expectancy in the profits from the intended immediate sale of the real estate to McKibben in late 2007—that is, it is an award akin to damages at law rather than an equitable award. *See UFG II*, 848 N.E.2d at 365 (noting that specific performance is inconsistent with damages at law under the doctrine of election of remedies). Our standard for equitable compensation is that a monetary award "be fairly and reasonably considered as naturally arising from a breach of contract, according to the usual course of things." *Id.* at 440. Any special compensation beyond that "usual course" is appropriate only where a need for that compensation is a foreseeable result of the breach because "the breaching party knew or had such circumstances communicated to it." *Id.*

The award of expectancy-style damages seems inappropriate here for two reasons. First, there is no evidence in the record that McKinney communicated to or that Ray Collins otherwise knew that McKinney planned to sell the real estate almost immediately upon closing the sale. Ray Collins knew that an option to buy was extended to McKinney's sublessee in the 1999 Sublease, but this is not the same thing as notice or knowledge of McKinney's immediate plans. Absent evidence of more direct communication between

McKinney and Robert, Jane, or Ray Collins, or other facts putting Ray Collins on notice of McKinney's plans to sell the real estate soon after closing on it, there is not enough evidence to establish the foreseeability of McKinney's lost profits based solely on the Sublease's option.

Second, there is no evidence from which the trial court could conclude that McKinney's sale was foreseeable in the "usual course of things," *id.*, nor did the trial court reach such a conclusion. The Estate continued to collect rent from McKibben until the sale of the real estate to McKinney. McKibben's presence on the real estate as a sublessee (through his company, Glenbrook Dodge, Inc.) came as a result of Tomkinson's assignment of the sublease to Glenbrook, which in turn gave rise to the 2004 suit that came before this court on appeal in *Collins v. McKinney, supra.* Unless Ray Collins was made aware of an existing arrangement between McKinney and McKibben, or unless the "usual course of things" with comparable real estate in this area was to purchase and "flip" the property to another buyer, there is no evidence that McKinney's lost profits from the delay in McKinney's purchase of the real estate from the Estate are foreseeable as a natural consequence of the breach.

We acknowledge the trial court's findings that McKinney planned to sell to McKibben and that he and McKibben had engaged in numerous discussions and negotiations over the planned sale. The facts of the planned sale and negotiations between McKinney and McKibben are not enough, however. To support the expectancy-style award fashioned by the trial court, the planned sale and the consequences of its delay must have been reasonably foreseeable to Ray Collins as Personal Representative of the Estate. There is no evidence to support such a finding in the trial record, nor did the trial court enter findings of fact to that effect.

Because the evidence and inferences therefrom do not support equitable compensation for lost profits on McKinney's sale of the real estate in 2009 instead of 2007, we reverse the trial court as to the value of the "damages" awarded and the accompanying award of pre-judgment interest. We therefore remand for determination of the proper amount of equitable compensation.

### Attorney's Fees

■ Finally, we turn our attention to the Estate's claim that the trial court erred when it awarded McKinney attorney's fees related to his petition for specific performance of the Option.

Generally, Indiana follows the "American Rule" under which parties pay their own attorney's fees unless an agreement between the parties, a statute, or other rule provides otherwise. *Smyth v. Hester,* 901 N.E.2d 25, 32 (Ind.Ct.App.2009) (citations omitted), *trans. denied.* Where, as here, attorney's fees are awarded on the basis of the non-prevailing party's conduct, we conduct our inquiry under Indiana Code Section 34–52–1–1. The statute provides that a court "may award attorney's fees as part of the cost . . . if the court finds that either party" raised a "frivolous, unreasonable, or groundless" defense; persisted in litigation even after that defense "clearly became frivolous, unreasonable, or groundless;" or litigated in bad faith. Ind.Code § 34–52–1–1(b).

In reviewing an award of attorney's fees under the statute, we engage in a three-step process. We review the trial court's findings of fact for clear error, neither reweighing evidence nor assessing the credibility of witnesses, but instead reviewing only evidence favoring the judgment and the reasonable inferences drawn accordingly, and reversing only when "we

are left with a definite and firm conviction that a mistake has been made." *Smyth,* 901 N.E.2d at 33 (citations omitted). We then review *de novo* the trial court's legal conclusions on whether the claim or defense is frivolous, groundless, unreasonable, or asserted in bad faith. *Id.* Finally, we look to see whether the trial court's decision to award fees and the amount of the fees awarded constitute an abuse of discretion. *Id.* at 33–34.

We are hard pressed to see how the trial court abused its discretion in assessing the Estate for at least some of McKinney's attorney's fees.

First, we find no clear error in the trial court's findings of fact, as the record reveals that the Estate simply refused to comply with a valid judgment. The Option had been adjudged as valid in the suit between McKinney and Jane Collins that was initiated in 2004, and the legal description of the real estate that the Estate challenged in the present case as invalid was attached to the Option as part of Jane Collins's answer and counterclaim in the 2004 case.

The Estate claimed that McKinney had not given proper notice of his intent to exercise the option. But Ray Collins later testified that he refused to publish notice of his mother's death in a Fort Wayne newspaper because his mother told him that she did not want to be buried or have her death announced until the Option was resolved and the family owned the property. In addition, McKinney and Ray Collins each provided testimony about the circumstances of McKinney's entrance into the Collins family's business, which included Ray Collins's departure from the business. The trial court found credible McKinney's claims that Ray Collins refused to perform his duties under the Option in 2007 because of long-lasting animosity between McKinney and

Ray Collins, and found that the reason Ray Collins refused to publish notice of his mother's death was to prevent McKinney from being able to exercise his option. We decline to reweigh this evidence. *See Smyth,* 901 N.E.2d at 33.

Even after the trial court ordered specific performance of the Estate's obligations under the Option, Ray Collins refused to close the sale and as a result was ordered to show cause why he should not be held in contempt for failure to comply with the trial court's order. He was subsequently suspended as Personal Representative of the Estate, and the trial court appointed a Special Administrator, which closed the sale with McKinney in April 2009—eight months after the entry of summary judgment against the Estate, fifteen months after the closing should have occurred under the terms of the Option, and nearly two years after Jane Collins's death. Ray Collins testified during trial that he resisted closing even after the order for specific performance for any number of reasons: in order to honor his mother's wishes, because McKinney failed to appear for closings, because he thought parallel lawsuits in other courts would remedy the summary judgment and order for specific performance issued by the trial court in this case, and because surveying was not complete on the real estate. Yet Ray Collins could not identify any particular time periods in which these issues arose, and the trial court determined that he "refused to honor his obligations under the Option ... and the Court's order of August 18, 2008." Given the totality of the proceedings and the record at trial, we cannot identify any clear error in the trial court's findings of fact.

Nor do we find that the trial court erred as a matter of law in holding that Ray Collins's continued refusal to close on the real estate after the trial court's order for

specific performance constituted frivolous, unreasonable, groundless, or bad faith litigation. While it claimed that it believed a collateral proceeding in another county would rectify what it perceived to be error by the trial court, the Estate did not seek to stay the order for specific performance or certify the court's summary judgment or the order for specific performance for interlocutory review.[5] Ray Collins insisted that he thought the parallel litigation would somehow void the trial court's decisions in this case. Yet the parallel cases centered on contractual matters for which damages would be paid and which, with the exception of Ray Collins's trial testimony claiming otherwise and argument during the summary judgment phase, had no bearing upon the validity of the Option or the legal description. We note again that the trial court suspended Ray Collins as Personal Representative for the Estate and appointed a special administrator to close the sale pursuant to the Option. We also note that Ray Collins could articulate no legal or factual basis for the delays leading to his suspension that the trial court found credible.

Simply put, Ray Collins's conduct after the order for specific performance and through the period of the sale of the real estate—including the Estate's attempt to void the Option one day before Lake City Bank filed its notice of sale—appears to constitute open defiance of the trial court's order without basis for refusal grounded in an appeal or other good-faith claim. We thus cannot agree with the Estate that the trial court erred as a matter of law when it awarded attorney's fees for the proceedings that followed the court's award of summary judgment and specific performance to McKinney and through the date of McKinney's final purchase of the property from the Special Administrator.

■ This is not to say that bad faith litigation by the Estate led to all of McKinney's attorney's fees. Before the order of specific performance and after the sale, the Estate articulated viable legal claims, and "[a] claim or defense is *not* ... groundless or frivolous merely because the party loses on the merits." *Smyth,* 901 N.E.2d at 33 (emphasis supplied). Before the order for specific performance, the Estate claimed that there was a question of material fact regarding the legitimacy of the legal description, a specific issue which had not been litigated in the case against Jane Collins in 2004.[6] After the closing in April 2009, though it again raised the issue of notice at trial, the Estate was engaged in defending the petition for damages and not merely seeking to advance a decided point. As a result, we vacate the award of attorney's fees and remand to the trial court for further proceedings to determine an award of attorney's fees related to McKinney's efforts to close on the property, exclusive of the periods of time before the order for specific performance and af-

5. We do not hold that the Estate waived its challenge to the summary judgment and order for specific performance. Rather, the Estate's failure to challenge the order in any way makes less credible the Estate's claim that attorney's fees are unwarranted for lack of frivolous, unreasonable, groundless, or bad faith litigation. This is particularly so where, as here, the result of specific performance could be a series of transactions leaving us with no real way to "unscramble the eggs" when the court-ordered sale led to a subse-

quent transfer of the real estate from McKinney to McKibben.

6. We acknowledge the trial court's determination and McKinney's contention on appeal that the Estate's argument regarding the legal description was barred as *res judicata.* We make no ruling on this issue. We simply remind the trial court that a determination that *res judicata* applies does not of itself entitle McKinney to attorney's fees for the litigation leading to summary judgment.

ter the closing between McKinney and Lake City Bank in April 2009.

### Conclusion

In light of the discussion above, we find no error in the court's award of summary judgment to McKinney, no error in the court's determination that Ray Collins breached the Option, and no error in the court's decision to award equitable compensation in the form of money to McKinney. We do, however, find error in the calculation of that compensation. While the trial court was correct in awarding attorney's fees to McKinney for some of the litigation, to the extent that the award included attorney's fees from before summary judgment and the order for specific performance and after the sale of the real estate, it erred in its determination of the scope of the fees for which the Estate would be responsible.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and KIRSCH, J., concur.