# FOR PUBLICATION



**FILED**
Jun 26 2012, 9:14 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CORNELIUS B. HAYES**
Fort Wayne, Indiana

**ANDREA R. TREVINO**
Bobilya Law Group LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**PERRY D. SHILTS**
Shilts Law Office
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CORTNEY L. SCHWARTZ, | ) |
| | ) |
| Appellant/Cross-Appellee/Respondent, | ) |
| | ) |
| vs. | )  No. 02A03-1109-DR-401 |
| | ) |
| JODI S. HEETER, | ) |
| | ) |
| Appellee/Cross-Appellant/Petitioner. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Thomas P. Boyer, Judge Pro Tempore
The Honorable Lori K. Morgan, Magistrate
Cause No. 02D07-0807-DR-474

**June 26, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Cortney L. Schwartz ("Father") appeals the trial court's order of summary judgment construing a "true up" provision in the settlement agreement entered in the dissolution of his marriage from Jodi S. Heeter ("Mother"). Mother cross-appeals, challenging the trial court's construction of the provision and seeking appellate attorney's fees.

We affirm in part, reverse in part, and remand.

**Issues**

The parties present several issues for our review, which we consolidate and restate as:

I. Whether the trial court erred when it construed the settlement agreement's "true up" provision to apply the previous year's Child Support Guidelines for each year's determination of Father's "true up" payments;

II. Whether Mother may, upon remand, be granted relief based upon her previously-filed Petition for Modification of Support; and

III. Whether Mother is entitled to appellate attorneys' fees under Appellate Rule 66.

**Facts and Procedural History**

Father and Mother were married in 1992. The marriage produced two children. On July 9, 2008, Mother filed her petition for dissolution of the marriage. On February 20, 2009, the parties entered into and jointly filed with the trial court a Marital Settlement Agreement ("the agreement" or "the settlement agreement"), in which the parties agreed, among other things, to a determination of Father's child support obligations. In this regard, the agreement provided:

The parties agree that the required support obligation shall be fixed and [Father] shall pay the sum of $430.00 per week (or $860.00 every two [2] weeks), if paid bi-weekly) [sic] to the Clerk of Allen County for the support of the parties' minor children by direct deposit into an account created by [Mother] for this purpose. The parties further agree to the following, on an annual basis, to account for irregular income:

True Up

At the conclusion of each calendar year, starting with 2009, the parties' respective weekly child support obligation shall be adjusted and recalculated by taking the amount of their gross taxable income from their tax return(s) for that year, dividing it by 52 weeks, and using this amount at line 1 of the [Child Support Obligation Worksheet], with all other factors remaining the same for purposes of calculating the parties' adjusted child support obligation. [Father] shall pay the difference between his weekly adjusted child support obligation, multiplied by 52 weeks, to [Mother] by May 1st of each year. As a part of this process, [Father and Mother] shall provide each other with a copy of the federal income tax return along with all attachments and schedules thereto.

The above support and methodology is [sic] a compromise by the parties to avoid litigation.

App. at 31-32.[1]

The determination of Father's weekly support obligation of $430 was based upon an estimate of $5872 for Father's weekly income and an estimate of $500 for Mother's weekly income, and was calculated using the 2009 Child Support Guidelines.[2] The terms of the

---

[1] This provision was entered into against advice of counsel for Mother, whose opinion, which formed part of the terms of the agreement, stated that the agreement "favors [Father], is less generous to [Mother's] children than the law would provide and may cause annual difficulties between the parties." App. at 49. Father also entered into the agreement against advice of counsel after his attorney advised that litigation might lead to a distribution of the marital estate more favorable to Father.

[2] The formula under the 2009 Guidelines for determining the weekly total child support obligation for one child where the parents' combined weekly income was greater than $4000 is $[89.42443 \times \ln(N)] - 411.24$, where "N" is the combined weekly adjusted income of the parents. (The function "ln(N)" indicates that among the operands used to determine support is the natural logarithm of N.) Where there are two children, the result of this formula is multiplied by 1.50 to determine the weekly child support obligation. This amount is then used to determine the child support obligation for the non-custodial parent based upon such factors as differences in parental income, expenses during parenting time, duplicated expenses, health

agreement were incorporated into the decree of dissolution of marriage, which the trial court entered on February 20, 2009.

In early 2010, Father recalculated his weekly support obligation for purposes of compliance with the "true up" provision of the agreement for 2009, and used the 2009 Guidelines' formula to make this determination. Based upon the results of the parties' 2009 federal income tax returns, Father determined that his weekly child support obligation for 2009 was $579, which is $149 per week more than the $430 weekly payment provided for by the agreement. Multiplying the difference by forty-four, which represented the number of weeks in 2009 during which the decree of dissolution was in effect, yielded a "true up" amount of $6,556. Father remitted this amount to Mother on May 5, 2010, and filed a Report to Court and Notice of Compliance to this effect on May 6, 2010.

On June 11, 2010, Mother filed her Objection to Report to Court and Notice of Compliance, in which she stated that Father had not complied with the provisions of the agreement, and this non-compliance left an outstanding support arrearage of more than $47,000. Along with the Objection, Mother filed a Petition for Citation for Contempt ("the Petition"), which alleged that Father's "true up" payment was insufficient under the terms of the agreement. In the alternative, the Petition requested relief in the form of a motion for modification of Father's child support obligations because of "a change of circumstances so substantial and continuing as to make the prior support order unreasonable." App. at 66.

---

insurance premiums. Ind. Child Support Guidelines 3(C)-(H) & 6 (2009). Using the procedure in the 2009 Guidelines, Father's recommended child support obligation would have been $402.95; the parties agreed to the slightly larger figure of $430.00.

The core of Mother's objection was that Father "incorrectly relied upon the no-longer existing Guideline Schedules associated with the 2009 Support Guidelines." App. 67. Basing her objection on the changed support calculations set forth in the 2010 Support Guidelines, Mother argued that Father's weekly support obligation for 2009 under the "true up" procedure was $1,655.93. Less the agreed-to $430 weekly payment amount, Father's remaining weekly support obligation under Mother's calculation was $1,225.93. Thus, Mother argued that the appropriate "true up" payment was $53,990, of which Father had paid only $6,556, leaving an arrears of $47,388.[3] App. at 67-69. Mother argued that Father's claimed underpayment was a willful violation of the terms of the "true up" provision, but requested that if the court determined otherwise that Father's support obligations be modified retroactive to the date of the Petition.

On December 22, 2010, Father moved for summary judgment and requested that the trial court rule in his favor on all the claims Mother raised in the Petition. On December 29, 2010, Father moved for a continuance and stay in proceedings on Mother's Petition pending the trial court's decision on his motion for summary judgment. On January 3, 2011, the trial court denied this motion, but scheduled a July 8, 2011, hearing on both the Petition and Father's motion for summary judgment. Also on January 3, 2011, Father filed a written motion requesting the trial court to enter findings of fact and conclusions of law as provided by Indiana Trial Rule 52.

---

[3] The amount Mother argued Father was in arrears does not match precisely the result of the calculations, which yields a "true up" amount under the 2010 Guidelines of $53,940.92, and an arrearage of $47,384.92.

On January 24, 2011, Mother filed her response to Father's motion for summary judgment and submitted a cross-motion for summary judgment. On February 28, 2011, Father filed his response to Mother's cross-motion for summary judgment and reply to Mother's brief in response to his own motion for summary judgment.

On April 29, 2011, Father filed his Report to Court and Notice of Compliance, which set forth Father's calculation of the "true up" amount he owed for 2010. Again basing his calculations on the 2009 Child Support Guidelines, Father determined that his weekly child support obligation for 2010 was $552 per week. Less the $430 per week already remitted during 2010, this resulted in a difference of $122 per week and a "true up" amount of $6,344 for 2010. Father remitted payment in this amount to Mother.

On May 20, 2011, Mother filed her objection to Father's Report and a Verified Petition for Citation for Contempt ("the Second Petition"). In the Second Petition, Mother again argued that Father improperly applied the 2009 Child Support Guidelines when he should have used the Guidelines in effect for the year during which Father was to make his "true up" payment. Based upon the 2011 Guidelines, Mother argued that Father's weekly support obligation upon application of the "true up" provision should have been determined to be $1290, which, less the $430 per week already paid, yielded a remaining weekly support obligation of $860. This would result in a "true up" payment for 2010 of $44,720. Based upon this, and taking into account the $6,344 Father had already paid, Mother's Second Petition argued that Father was $38,376 in arrears for his 2010 child support obligation. Also on May 20, 2011, Mother filed a supplement to her prior motion for summary judgment and

6

to her response to Father's motion, which incorporated her allegations in the Second Petition into the summary judgment proceedings.

On August 8, 2011, the trial court entered its order on Mother's motion for summary judgment. Interpreting the "true up" provision, the trial court concluded that Father's "true up" payment of $6,556 was correctly determined based upon the 2009 Guidelines, but that Father's "true up" payment for 2010 should have been based upon the 2010 Guidelines. Because Father paid $6,344 to Mother as his "true up" payment for 2010, the trial court's construction of the agreement determined Father's payments to be in arrears by $38,376, and ordered that Father pay this amount to Mother by December 8, 2011. Thus, the trial court partially granted and partially denied each party's motion for summary judgment.

This appeal ensued.

**Discussion and Decision**

Construction of the "True Up" Provision

Father and Mother both challenge the trial court's construction of the "true up" provision of the settlement agreement.

In reviewing an appeal from a trial court's decision to grant or deny a motion for summary judgment, we stand in the same position as the trial court and review the motion <u>de novo</u>. <u>Williams v. Tharp</u>, 914 N.E.2d 756, 761 (Ind. 2009). Summary judgment is appropriate only where there is no question of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A trial court's entry of summary judgment "arrives on appeal 'clothed with a presumption of validity,'" and thus the party

7

challenging summary judgment must bear the burden of proving that the movant was not entitled to summary judgment. Williams, 914 N.E.2d at 762 (quoting Rosi v. Bus. Furniture Corp., 615 N.E.2d 431, 434 (Ind. 1993)). We construe all factual inferences in favor of the non-movant, and resolve all doubts regarding the existence of a material issue against the moving party. Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1270 (Ind. 2009). Specific findings and conclusions are not required at summary judgment, and while they may offer valuable insight, they are not binding upon our review of a summary judgment order. Bradley v. Hall, 720 N.E.2d 747, 750 (Ind. Ct. App. 1999).

The interpretation of a contract provision is a question of law. Town of Plainfield v. Paden Eng'g Co., 943 N.E.2d 904, 909 (Ind. Ct. App. 2011), trans. denied. Thus, summary judgment is especially appropriate in the context of contract interpretation. Id.

Where, as here, cross-motions for summary judgment are at issue, our standard of review remains unchanged. Kelley v. Med-1 Solutions, LLC, 952 N.E.2d 817, 827 (Ind. Ct. App. 2011), trans. denied. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

Here, Mother and Father entered into a settlement agreement, which the trial court incorporated into the decree of dissolution of marriage. Our supreme court has stated the standard by which Indiana courts interpret settlement agreements.

> Courts therefore interpret the settlement agreements using ordinary contract principles. Bailey [v. Mann], 895 N.E.2d [1215,] 1217 [(Ind. 2008)]. Thus, the goal of courts in interpreting a settlement agreement is to ascertain and give effect to the parties' intent. See Reuille v. E.E. Brandenberger Const., Inc., 888 N.E.2d 770 (Ind. 2008). Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable

8

expectations. First Federal Sav. Bank v. Key Markets, Inc., 559 N.E.2d 600 (Ind. 1990). When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder. Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship, 674 N.E.2d 558 (Ind. 1996).

Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010).

Here, the parties recognized that Father's income might vary from year to year based upon occasional earnings beyond the weekly income estimated in 2009. Thus, they agreed to a procedure by which variations in Father's income could be taken into account for purposes of determining Father's child support obligations without requiring litigation, namely, the "true up" provision in the settlement agreement. That procedure was then incorporated into a court order.

Thus, the court's decree of dissolution of marriage includes the provision upon which the parties' appeal now centers:

> At the conclusion of each calendar year, starting with 2009, the parties' respective weekly child support obligation shall be adjusted and recalculated by taking the amount of their gross taxable income from their tax return(s) for that year, dividing it by 52 weeks, and using this amount at line 1 of the [Child Support Obligation Worksheet], with all other factors remaining the same for purposes of calculating the parties' adjusted child support obligation.

App. at 32.

The parties' disagreement centers on whether the language, "with all other factors remaining the same for purposes of calculating the parties' adjusted child support obligation," requires the parties to apply the Child Support Guidelines' weekly child support obligation formula as it existed in 2009 or in later years. Father contends that "all other factors remaining the same" means that only line 1 of the Child Support Obligation

9

Worksheet may change, and that the 2009 formula applies going forward until the child support obligation is modified. Mother contends that the Guidelines are to be applied as they exist in the year in which the "true up" payment will be made. Under this procedure, then, the "true up" payment for 2009 should have used the 2010 Guidelines because Father made the payment in 2010, the payment for 2010 should have used the 2011 Guidelines because Father made the payment in 2011, etc.

The trial court held that the agreement requires that the Child Support Guidelines be applied as they exist in the calendar year for which the "true up" process is used. Thus, on the trial court's construction of the "true up" provision, it concluded that Father paid the correct "true up" amount in 2010 for the 2009 calendar year because he calculated his payment amount based upon the 2009 Guidelines. However, the trial court concluded that Father's 2011 calculation for the "true up" payment for the 2010 calendar year was incorrect because Father again applied the 2009 version of the Guidelines rather than the 2010 version of the Guidelines.

Which set of Guidelines applies at what time is of no small event. Father's calculation of his "true up" payment for the 2009 calendar year resulted in a recommended weekly child support obligation for Father of $579, or $149 more per week than the $430 provided by the settlement agreement. Multiplied by forty-four (the number of weeks in 2009 during which the agreement was in force), this results in a "true up" amount of $6,556. Following Mother's approach of applying the 2010 version of the Guidelines results in a recommended support obligation of $1,656, or roughly $1,226 more than the $430 weekly obligation

10

provided by the agreement. Multiplied by forty-four, this yields a "true up" payment amount of $53,499, or $47,388 more than Father's result. A similar disparity obtains for the 2010 calendar year "true up" payment, with Father calculating a payment of $6,344 and Mother calculating a payment of $38,376.

Central to each party's argument is the meaning of "factors" as used in the settlement agreement. Father contends "factors" includes all facets of the calculation used to determine his child support obligation, including the formula specified by the 2009 Guidelines. Mother contends "factors" includes only the numbers entered into the Child Support Obligation Worksheets, but that the formula itself is not among the factors determined by the agreement.

We think the use of the word "factors" in the phrase, "with all other factors remaining the same for purposes of calculating" the child support obligation, requires application of the 2009 Guidelines' formula—at least until Mother properly seeks modification of Father's child support obligations under Section 31-16-8-16. The word factor has many definitions, but the two most directly applicable definitions relate to the more colloquial use of "factor" as any fact that bears upon the outcome of a result, and the more mathematically specific meaning of "factor" as the numbers calculated in determining the product of a multiplication. Webster's Third New International Dictionary Unabridged 813 (2002).

Under either definition, each of the numbers used to determine the weekly child support obligation amounts—and thus the amount of the "true up" payment for a given year—is a factor in the determination of Father's support obligations. Indeed, the Child Support Guidelines' formulas are themselves factors under the more colloquial definition, as

11

trial courts have discretion in deviating from the results of the Guidelines' calculations where "the Guideline amount is unjust or inappropriate in a particular case." Ind. Child Support Guideline 3(F)(2) (2011) (citing I.C. § 31-16-6-1 & -2).

Moreover, this construction of the agreement seems the most compatible with the provisions of the agreement itself, particularly in light of the provision indicating that Mother's decision to enter the agreement was against the advice of counsel. That provision included Mother's counsel's opinion that the "true up" provision was not as generous in establishing Father's child support obligations as would result from litigation based upon the Child Support Guidelines.

Thus, we conclude that the trial court's entry of summary judgment against Father on Mother's claim regarding the 2010 "true up" payment was in error. We construe the "true up" provision's language to require continued application of the 2009 Guideline formula until mother properly moves for modification of child support. Because we agree with the trial court that Father's 2010 "true up" payment for 2009 of $6,556 was correct, we affirm that portion of the trial court's order granting Father summary judgment. In conformance with our reasoning above, however, we reverse as to the trial court's determination regarding Father's 2011 "true up" payment for 2010, and remand for entry of an order consistent with our decision today.[4]

---

[4] We recognize that the trial court's decision appears more equitable. Writ large, however, that decision would have the effect of modifying numerous preexisting and unchallenged support arrangements through the operation of law.

12

<u>Relief upon Remand under Previously Filed Motion for Modification</u>

Mother argues in her cross-appeal that she may resume pursuing modification of Father's child support obligations as of the date of her filing of the motion for modification. Father responds that the trial court has already denied these motions and that, in any event, Mother has waived the trial court's consideration of these motions.

Our Appellate Rules require appellants' briefs to provide cogent argumentation of designated issues with citation to relevant authorities. Ind. Appellate Rule 46(A)(8)(a). Failure to comply with these requirements may result in the waiver of an issue upon appeal. <u>Estate of Collins v. McKinney</u>, 936 N.E.2d 252, 258 (Ind. Ct. App. 2010), <u>trans. denied</u>. The same requirements apply to an appellee's brief, and the language of Rule 46(D)(2), which states the requirements for an appellee's brief on cross-appeal, echoes that of Rule 46(A)(8): "[t]he Appellee's Brief shall contain any contentions the appellee raises on cross-appeal as to why the trial court or Administrative Agency committed reversible error." App. R. 46(D)(2); <u>cf.</u> App. R. 46(A)(8) (providing that the Argument section of an appellant's brief "shall contain the Appellant's contentions why the trial court or Administrative agency committed reversible error"). Moreover, this Court has previously applied the requirements for an appellant's response to issues raised on cross-appeal in a similar manner to the requirements of an appellee's response to an appellant's arguments. <u>See</u> <u>In re Riddle</u>, 946 N.E.2d 61, 70-71 (Ind. Ct. App. 2011) (applying the <u>prima facie</u> error standard of review, ordinarily used when an appellee does not respond to an appellant's brief, in a case where the appellant failed to respond in a reply brief to appellee's contentions on cross-appeal).

13

Here, Mother contends that the trial court did not deny her requests to modify Father's support obligations. During a hearing on September 9, 2011, concerning the parties' motions for attorneys' fees, counsel for Father raised to the trial court the disposition of the Petition and Second Petition for contempt, each of which requested in the alternative that the trial court grant relief in the form of a modification of Father's child support obligations. The trial court declined to find Father in contempt of court. The trial court continued:

> with respect to the alternative request to modify support … the Court is not modifying support but the request for relief that the Petitioner has asked for has been addressed through the Court's ruling on the motions for summary judgment but I'm denying, I will technically deny both.
>
> ***
>
> Okay, so the Court is denying those pleadings and then the remaining issue is the request for the payment of attorney fees…?

Sept. 9, 2011 Hrg. Tr. at 8-9.

Counsel for Mother then inquired, "you are denying the request that [Father] is not found in contempt?" Sept. 9, 2011 Hrg. Tr. at 10. The trial court confirmed this. Immediately afterward, counsel for Father asked, "[a]nd the alternative is as you have already spoken," to which the court answered, "Yes." Sept. 9, 2011 Hrg. Tr. at 10. The trial court then heard argument from the parties about other pending motions and the parties' requests for attorneys' fees.

Based upon this exchange, we conclude that the trial court ruled on Mother's alternative request for relief in the Petition and Second Petition by denying her successive requests for modification of Father's support obligation. During the September 9, 2011,

14

hearing, Mother did not argue that the summary judgment order did not incorporate within it her alternative basis for relief. Mother also did not request that the trial court withhold its ruling on the motions for modification pending the presentation of other evidence.

Mother now seeks to reopen the trial court's decision on these requests, stating only that "the Court's subsequent denials of 'motions' related to [Mother's] effort to have [Father] found in contempt in two separate pleadings." Appellee's Br. at 23. Without citation to authority or cogent argument, Mother baldly asserts that the case "should be remanded for evidence to be presented on [her] Motion to Modify filed on June 11, 2010." Appellee's Br. at 23.

We disagree. Because Mother has failed to comply with Appellate Rule 46(A)(8), her argument on this matter is waived. Moreover, it seems clear to us that the trial court has denied the request for modification. We leave it to the trial court, then, to determine whether it will reconsider that decision and hear evidence on Mother's requests.

<u>Mother's Request for Appellate Attorney's Fees</u>

Finally, Mother requests appellate attorney's fees in her cross-appeal. Our appellate rules provide that we "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." App. R. 66(E).

> An award of appellate attorney fees "is discretionary and may be ordered when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Trost–Steffen v. Steffen, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002), trans. denied. "However, we must use extreme restraint when exercising our discretionary power to award damages on appeal

15

because of the potential chilling effect upon the exercise of the right to appeal." Id.

Gertz v. Estes, 922 N.E.2d 135, 138 (Ind. Ct. App. 2010).

We cannot say that Father's appeal was "'replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.'" Id. (quoting Trost-Steffen, 772 N.E.2d at 514). Indeed, our decision agrees with Father's arguments on substantial issues and not Mother's arguments. Mother is not, then, entitled to appellate attorney's fees under Appellate Rule 66.

**Conclusion**

The trial court's construction of the "true up" agreement was erroneous, and thus its entry of summary judgment was partially in error as to Father's "true up" obligation for 2010. Mother may not, upon remand, seek rulings from the trial court on her prior motions for modification of Father's support obligation. Finally, we deny Mother's request for appellate attorney's fees under Appellate Rule 66.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., concurs.

MATHIAS, J., concurs in part and dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

CORTNEY L. SCHWARTZ,      )
      )
    Appellant/Cross-Appellee      )
      )
      vs.      )    No. 02A03-1109-DR-401
      )
JODI S. HEETER,      )
      )
    Appellee/Cross-Appellant      )

**MATHIAS, J., concurring in part and dissenting in part**

I agree with the trial court's interpretation of the "true up" provision of the parties'

marital settlement agreement, and I respectfully dissent from the majority with regard to this

issue.[5]

The portion of the settlement agreement at issue provides:

At the conclusion of each calendar year, starting with 2009, the parties'
respective weekly child support obligation shall be adjusted and recalculated
by taking the amount of their gross taxable income from their tax return(s) for
that year, dividing it by 52 weeks, *and using this amount at line 1 of the CSOW*

---

[5] Although I do not find Father's appellate argument to be persuasive, I concur with the majority's
conclusion that Mother is not entitled to appellate attorney fees.

17

> [Child Support Obligation Worksheet], *with all other factors remaining the same* for purposes of calculating the parties' adjusted child support obligation.
> . . .

Appellant's App. p. 32.

As explained by the majority, the formula for calculating child support under the 2009 Child Support Guidelines was subsequently changed in a manner that would lead to a much larger child support obligation for Father. That is, using the formula from the 2009 Guidelines, Father's 2009 true up payment would be the relatively modest sum of $6,556. However, using the formula from the 2010 Guidelines, Father's true up payment is the much larger sum of $53,940.92. Similarly, applying the 2009 Guidelines formula to calculate Father's 2010 true up payment results in a total of $6,344. But using the formula from the 2010 Guidelines[6] would result in a true up payment of $44,720

Father argues that the phrase "with all other factors remaining the same" means that the 2009 Guidelines formula must be applied unless and until his support obligation is modified by the trial court. Mother argues that the proper formula to be used is the one which is applicable in the year the calculations are performed and the true up payment is made, e.g., the 2010 Guidelines formula is to be used to determine the 2009 true up due in 2010, and the 2011 Guidelines formula is to be used to determine the 2010 true up due in 2011. The trial court, adopting neither party's position, concluded that the proper formula to be used is the one that was applicable during the year for which the true up was due, not the

---

[6] The Guidelines were amended effective January 1, 2010, and appear not to have been amended since.

year it was payable, e.g., the 2009 formula for the 2009 true up payment, and the 2010 formula for the 2010 true up payment.

The majority agrees with Father, concluding that the formula to be used to calculate the "true up" is a "factor" that must remain the same pursuant to the language of the agreement. To me, this misuses the word "factor," within the context of the agreement. The relevant language of the agreement provides that the parties' actual weekly income for the year at issue will be calculated based on their tax returns and that this amount will be used "at line 1 of the CSOW [Child Support Obligation Worksheet], with all other factors remaining the same." Appellant's App. p. 32. I think it is clear from the structure of this sentence that the other "factors" that will remain the same are the other variables that go into calculating the true up amount, not the child support obligation worksheet or formula itself.

It is clear that the parties intended to "adjust and recalculate[]" the child support obligation at the end of each year, and they are to be commended on their foresight in making provisions to do so. Appellant's App. p. 32. However, the formula used to adjust and recalculate the child support obligation should be the formula applicable to the income earned during that year, precisely as the trial court held. Perhaps the parties did not anticipate that the formula used to calculate the true up might change in the future. But if Father intended to freeze his support obligation at the 2009 level, then certainly this intent should have been stated explicitly. And if the parties did not anticipate the possibility that the formula might change, then the party who should bear the risk of any change should be Father, not the children.

Indeed, it should be kept in mind that the money at issue is not for the benefit of Mother. Instead, she is merely the trustee of the payments for the use and benefit of the children. See Straub v. B.M.T. by Todd, 645 N.E.2d 597, 599 (Ind. 1994). Nor does either parent have a right to contract away the support benefits of their children, as the right to the support lies exclusively with the children. See id. It is for this reason that settlement agreements that purport to contract away these rights are directly contrary to public policy and unenforceable. Id. at 600.

Although the agreement here does not purport to wholly contract away Father's support obligation, I believe that any ambiguity in the language of the agreement should be construed in the manner that is more favorable to the children. Had the parties desired to use the 2009 Guidelines formula regardless of the year for which the true up payments were calculated, that intent should have been explicitly stated in the language of the agreement. Because the agreement is not explicit in this regard, I would hold that the Guidelines formula in effect during the year for which the true up calculation is performed is the proper formula to use.

Because I agree with the trial court's resolution of the issues, I would affirm the trial court's grant of summary judgment in all respects.